UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN FLEMING,

Plaintiff,

v.

MATCO TOOLS CORPORATION, et al.,

Defendants.

Case No. 19-cv-00463-WHO

**ORDER DENYING MOTION TO DISMISS OR TRANSFER VENUE; DENYING MOTION TO FILE SUR-REPLY**

Re: Dkt. Nos. 16, 25

Plaintiff John Fleming brings suit on behalf of himself and a putative class of other distributors that he asserts were misclassified as independent contractors, rather than employees, by defendants Matco Tools Corporation, NMTC, Inc., d/b/a Matco Tools, and Fortive Corporation (collectively "Matco"). Complaint ("Compl.") at ¶¶ 1,5 [Dkt. No. 1]. Matco moves to dismiss or transfer this case pursuant to a forum selection clause contained in an agreement between it and Fleming. There is a state statute that would invalidate the forum selection clause contained in the agreement, but Matco argues that I must enforce the forum selection clause because the statute is preempted by the Federal Arbitration Act ("FAA"). Fleming responds that the FAA does not apply because the arbitration agreement is void by its own terms and that I must apply the state statute invalidating the forum selection clause. I agree with Fleming and will deny Matco's motion to dismiss or transfer.

**BACKGROUND**

Matco manufactures and distributes mechanic's tools and service equipment. *Id.* at ¶ 6. It relies on distributors to make sales and service calls to existing and prospective customers through mobile distributorship stores. *Id.* Fleming was a distributor for Matco from July of 2012 through December of 2018. *Id.* at ¶ 9. He claims that, by allegedly misclassifying him and similarly

situated distributors as independent contractors, Matco has sought to avoid various duties and

obligations owed to employees under California's Labor Code and Industrial Welfare Commission

wage orders, including: the duty to indemnify employees for all expenses and losses necessarily

incurred in connection with their employment; the duty to pay overtime compensation for hours

worked in excess of eight hours in a day or forty hours a week; the duty to provide off-duty meal

periods; the duty to authorize and permit paid rest periods; the duty to furnish accurate wage

statements; the duty to pay employees all wages owed upon termination; and unlawful collection

and receipt of earned wages. *Id.* at ¶ 6.

According to Matco, Fleming entered into two distributorship agreements with it in July

2012 and October 2013.[1] Declaration of Mike Swanson at ¶¶ 4, 5 [Dkt. No. 16-1]. The July 2012

distributorship agreement was amended in October 2013 and November 2016. *Id.* The October

2013 distributorship agreement was terminated in September 2015. *Id.* at ¶ 5. For the purposes of

this motion, both the July 2012 agreement and October 2013 are functionally the same and will be

collectively referred to as the "Distribution Agreement." The Distribution Agreement contains a

forum selection clause which states:

> Unless this requirement is prohibited by law, all arbitration hearings
> must and will take place exclusively in Summit or Cuyahoga County,
> Ohio. All court actions, mediations or other hearings or proceedings
> initiated by either party against the other party must and will be
> venued exclusively in Summit or Cuyahoga County, Ohio. Matco
> (including its employees, agents, officers or directors and its parent,
> subsidiary or affiliated companies) and the Distributor (including
> where applicable the Distributor's Spouse, immediate family
> members, owners, heirs, executors, successors, assigns, shareholders,
> partners, and guarantors) do hereby agree and submit to personal
> jurisdiction in Summit or Cuyahoga County, Ohio in connection with
> any Arbitration hearings, court hearings or other hearings, including
> any lawsuit challenging the arbitration provisions of this Agreement
> or the decision of the arbitrator, and do hereby waive any rights to
> contest venue and jurisdiction in Summit or Cuyahoga County, Ohio
> and any claims that venue and jurisdiction are invalid. In the event
> the law of the jurisdictions in which Distributor operates the
> Distributorship require that arbitration proceedings be conducted in
> that state, the Arbitration hearings under this Agreement shall be
> conducted in the state which the principal office of the Distributorship
> is located, and in the city closest to the Distributorship in which the

---

[1] In evaluating a motion to dismiss based on a forum selection clause, I may consider declarations by the parties. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

American Arbitration Association has an office. Notwithstanding this Article, any actions brought by either party to enforce the decision of the arbitrator may be venued in any court of competent jurisdiction.

July 2012 Distributorship Agreement at ¶ 12.10 [Dkt. No. 16-2]; October 2012 Distributorship Agreement at ¶ 12.10 [Dkt. No. 16-4].

Matco moves to dismiss the complaint or, in the alternative, to transfer this case to the Northern District of Ohio in light of the above forum selection clause and the arbitration clause contained in the Distribution Agreement. Motion to Dismiss ("Mot.") [Dkt. No. 16]. If this case is transferred, Matco will move to compel arbitration once the matter is lodged in the Northern District of Ohio. *Id.*

### LEGAL STANDARD

Forum selection clauses are "presumptively valid," and "honored" "absent some compelling and countervailing reason." *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). "The party challenging the clause bears a heavy burden of proof and must clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Id.* at 1140 (internal quotation marks and citation omitted). A forum selection clause may be unreasonable if: (1) "the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "enforcement would contravene a strong public policy of the forum in which suit is brought." *Id.*

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013). When a motion to dismiss is based on a forum selection clause, rather than solely on the doctrine of forum non conveniens, the Supreme Court has held that a district court cannot consider the "private interest" factors, such as the plaintiff's choice of forum and the convenience of parties and witnesses. *See id.* at 62–64. Instead, the court may only weigh the "public interest" factors, which "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6.

3

1   "For the convenience of parties and witnesses, in the interest of justice, a district court may

2   transfer any civil action to any other district or division where it might have been brought or to

3   any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  When a case

4   concerns an enforcement of a forum selection clause, section 1404(a) provides a mechanism for its

5   enforcement and "a proper application of § 1404(a) requires that a forum-selection clause be given

6   controlling weight in all but the most exceptional cases." *Marine*, 571 U.S. at 59-60 (internal

7   quotation marks omitted).  Plaintiff bears the burden of showing these exceptional circumstances

8   that make transfer inappropriate. *Id.* at 64.  Plaintiff must show either that the forum selection

9   clause is not valid or that the public interest factors recognized under section 1404(a) make

10  transfer inappropriate. *Id.* at 64; *see also Bayol v. Zipcar, Inc.*, No. 14-cv-02483-TEH, 2014 WL

11  4793935, at \*1 (N.D. Cal. Sept. 25, 2014).

**DISCUSSION**

**I.    THE APPLICABILITY OF CALIFORNIA BUSINESS AND PROFESSIONS CODE**
**       § 20040.5 AND THE FEDERAL ARBITRATION ACT**

15      The success of Matco's motion to dismiss or transfer this case depends on the applicability

16  of California Business and Professions Code § 20040.5.  The statute makes void any "provision in

17  a franchise agreement restricting venue to a forum outside this state . . . with respect to any claim

18  arising under or relating to a franchise agreement involving a franchise business operating within

19  this state." Cal. Bus. & Prof. Code § 20040.5.  The Ninth Circuit has held that it "expresses a

20  strong public policy of the State of California to protect California franchisees from the expense,

21  inconvenience, and possible prejudice of litigating in a non-California venue." *Jones v. GNC*

22  *Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  A forum selection clause "that requires a

23  California franchisee to resolve claims related to the franchise agreement in a non-California

24  court[,]" such as the one here, "directly contravenes this strong public policy and is unenforceable

25  under the directives of *Bremen*." *Id.* (*citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1

26  (1972)).

27      Matco argues that California Business and Professions Code § 20040.5 does not apply

28  because the Distribution Agreement contains a valid arbitration provision and, as a result, the state

4

1  statute is preempted by the FAA. Mot. at 10-11 (*citing Bradley v. Harris Research, Inc.*, 275 F.3d

2  884, 890 (9th Cir. 2001)). [2] In *Bradley*, the Ninth Circuit analyzed the Supreme Court's decisions

3  in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) and *Perry v. Thomas*, 482 U.S. 483

4  (1987), as well as the language of 9 U.S.C. § 2, to determine that "a state law that invalidates

5  arbitration provisions is not preempted by the FAA only if the law is 'generally applicable,' or

6  applies to 'any contract.' " *Id.* at 890 (*quoting Doctor's Assocs.*, 517 U.S. at 687; 9 U.S.C. § 2).

7  The court reasoned that Section 20040.5 was preempted by the FAA because it "applies only to

8  forum selection clauses and only to franchise agreements" and "therefore [Section 20040.5] does

9  not apply to 'any contract.' " *Id.* This led the Ninth Circuit to reverse the district court's order

10  compelling the parties to participate in private arbitration in California, rather than in Utah, as

11  dictated by the franchise agreement's forum selection clause. *Id.* Matco contends that I should

12  follow *Bradley* and find that Section 20040.5 is preempted here by the FAA and that I must

13  enforce the forum selection clause.

14  Matco is correct in stating that, typically, forum selection clauses are considered prima

15  facie valid and courts are not to consider other parts of the contract, or the validity of a contract as

16  a whole, when ruling on a motion to transfer or dismiss. Defendants' Reply in Support of Motion

17  to Dismiss, or, in the Alternative, Transfer Venue to the U.S. District Court for the Northern

18  District of Ohio ("Reply") at 1-3 [Dkt. No. 22]. But, as Fleming argues, this is not a typical

19  situation. The only reason that the forum selection clause would not be invalidated by Section

20  20040.5 is the preemptive effect of the Distribution Agreement's arbitration provision. Plaintiff's

21  Opposition to Defendants' Motion to Dismiss ("Oppo.") at 4-6 [Dkt. No. 21]. But because the

22  arbitration provision is invalid, Fleming contends, *Bradley* is not controlling and the arbitration

23  

24  [2] Although *Bradley* has been called into question by the Ninth Circuit's decision in *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432-33 (9th Cir. 2015) based on the Supreme Court's

25  decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), it remains good law. As the Honorable Jaqueline Scott Corley held in *Bell Prod., Inc. v. Hosp. Bldg. & Equip. Co.*, "[n]either

26  the Ninth Circuit sitting *en banc* nor the Supreme Court have overruled *Bradley*[,] . . . [n]or did the three-judge panel in *Sakkab* expressly overrule *Bradley* in light of *Concepcion*" and that

27  "[a]bsent an order overruling the decision, it remains good law in the Ninth Circuit and binding precedent on the Court." No. 16-cv-04515-JSC, 2017 WL 282740, at *4 (N.D. Cal. Jan. 23,

28  2017).

5

1   provision in the Distribution Agreement cannot serve as a predicate to evade the reach of Section

2   20040.5. *Id.* He insists that I must go beyond the terms of the forum selection clause itself and

3   first evaluate the validity of the arbitration provision. *Id.*

4          I agree with Fleming that in order to rule on Matco's motion, I must make a threshold

5   determination on the validity of the arbitration provision to determine if it preempts Section

6   20040.5. The analysis required here is less straightforward than in the typical motion to dismiss or

7   transfer because the only reason that a directly on point state statute does not invalidate the

8   Distribution Agreement's forum selection clause is the preemptive effect of an allegedly invalid

9   arbitration provision. Put differently, but for the existence of the arbitration provision, Section

10  20040.5 would apply and the forum selection clause would be void. This motion hinges on the

11  preemptive effect of the arbitration provision and I cannot turn a blind eye toward questions of its

12  validity.

13         Matco's cited authority to the contrary does not apply because none of the cases involve

14  similar state statutes or the preemptive effects of arbitration agreements under the FAA. Instead,

15  each stands for the uncontroversial proposition that generally it is inappropriate to analyze the

16  validity of the contract as a whole when determining the applicability of a forum selection clause.

17  *Id.* (*citing Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (holding that

18  federal courts may consider claim of fraud in the inducement of the arbitration clause itself but not

19  fraud in the inducement of a contract generally); *Washington v. Cashforiphones.com*, No. 15-cv-

20  0627, 2016 WL 6804429, *4 (S.D. Cal. Jun. 1, 2016) (rejecting arguments related to contract

21  validity for failure to identify the contracting parties, fraud, and public policy); *Cream v. N.*

22  *Leasing Sys., Inc.*, No. 15-cv-1208-MEJ, 2015 WL 4606463, *6 (N.D. Cal. Jul. 31, 2015)

23  (rejecting arguments related to concealment, fraudulent inducement, and public policy); *Lizdale v.*

24  *Advanced Planning Servs., Inc.*, No. 10-cv-0834, 2011 WL 1103642, *6, (S.D. Cal. Mar. 25,

25  2011) (rejecting arguments related to fraudulent inducement, lack of consideration, inconvenience

26  of parallel litigation, risk of unfair prejudice, and risk of conflicting judgments); *SeeComm*

27  *Network Servs. Corp. v. Colt Telecomm.*, No. 04-cv-1283-MEJ, 2004 WL 1960174, *4 (N.D. Cal.

28  Sept. 3, 2004) (rejecting arguments related to unilateral mistake, fraudulent inducement, and

1    affordability)).

2        In order to determine if Section 20040.5 applies or is preempted, I must first decide

3    whether the arbitration provision in the Distribution Agreement is enforceable. Fleming gives

4    several reasons that it is not: it is void by its own terms; even if it is not, it would expressly

5    exclude his claims; it is invalid; and it is not severable. Oppo. at 10-19. I review those arguments

6    below.

7    **II.     THE ENFORCEABILITY OF THE ARBITATION PROVISION**

8        Fleming asserts that, by its own terms, the arbitration provision is null and void in light of

9    the Distribution Agreement's severability provision and the impermissible waiver of his PAGA

10    claim. Oppo. at 10-12. The portion of the Distribution Agreement titled "Severability" states:

> It is the desire and intent of the parties to this Agreement that the
> provisions of this Article be enforced to the fullest extent permissible
> under the laws and public policy applied in each jurisdiction in which
> enforcement is sought. Accordingly, if any part of this Article is
> adjudicated to be invalid or unenforceable, then this Article will be
> deemed amended to delete that potion thus adjudicated to be invalid
> or unenforceable, such deletion to apply only with respect to the
> operation of this Article in the particular jurisdiction in which the
> adjudication is made. Further, to the extent any provision of this
> Article is deemed unenforceable by virtue of its scope, the parties to
> this Agreement agree that the same will, nevertheless be enforceable
> to the fullest extent permissible under the laws and public policies
> applied in such jurisdiction where enforcement is sought, and the
> scope in such a case will be determined by Arbitration as provided
> herein, **provided, however that if the provision prohibiting
> classwide or private attorney general arbitration is deemed
> invalid, then the provision requiring arbitration of breaches
> between the parties shall be null and void and there shall be no
> obligation to arbitrate such breaches.**

21    Distribution Agreement at ¶ 12.12 (emphasis added). The portion of the Distribution Agreement

22    titled "No Class Actions" states in relevant part:

> No matter how styled by the party bringing the claim, any claim or
> dispute is to be arbitrated on an individual basis and not as a class
> action. **THE DISTRIBUTOR EXPRESSLY WAIVES ANY
> RIGHT TO ARBITRATE OR LITIGATE AS A CLASS
> ACTION OR IN A PRIVATE ATTORNEY GENERAL
> CAPACITY.**

Distribution Agreement at ¶ 12.7 (emphasis in original). Read together, Fleming contends that if

the PAGA waiver in ¶ 12.7 is found to be invalid, the arbitration provision is similarly invalid

7

1   under ¶12.12.  Oppo. at 10-12.

2          PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state

3   against his or her employer for Labor Code violations committed against the employee and fellow

4   employees, with most of the proceeds of that litigation going to the state." *Sakkab*, 803 F.3d at

5   429 (*citing Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal.4th 348 (Cal. 2014)).  It was

6   enacted to (i) provide civil penalties for violations of parts of the labor code that had previously

7   only carried criminal penalties, and (ii) to make up for the shortage of government enforcement

8   resources to combat violations of the labor code.  *Id.* at 429-30 (internal citations omitted).  To

9   compensate for the shortage of resources, PAGA permitted aggrieved employees to act as private

10  attorneys general to collect civil penalties for labor code violations, with seventy five percent of

11  recovered penalties distributed to the California Labor and Workforce Development Agency.  *Id.*

12  (internal citations omitted).

13         In *Sakkab*, the Ninth Circuit held that pre-dispute agreements to waive PAGA claims are

14  unenforceable for two reasons.  *Id.* at 430-31 (*citing Iskanian*, 59 Cal.4th at 382–83).  First,

15  California Civil Code § 1668 states that agreements exculpating a party for violations of the law

16  are unenforceable.  *Id.* (internal citations omitted).  Second, under California Civil Code § 3513, a

17  law established for a public reason may not be contravened by private agreement.  *Id.* (internal

18  citations omitted).  Describing the California Supreme Court's reasoning in *Iskanian*, the Ninth

19  Circuit stated that "agreements requiring the waiver of PAGA rights would harm the state's

20  interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter

21  violations."  *Id.* (internal citations omitted).  This applies to agreements waiving the right to bring

22  "representative" PAGA claims—claims seeking penalties for Labor Code violations affecting

23  other employees—as well.  *Id.* (internal citations omitted).

24         Applying the rule in *Sakkab* and *Iskanian* here, the Distribution Agreement's PAGA

25  waiver contained in ¶12.7 constitutes an impermissible pre-dispute agreement to waive Fleming's

26  PAGA claims.  Combined with the severability provision contained in ¶ 12.12, the provision

27  requiring arbitration of breaches between Fleming and Matco is null and void and neither party

28  has an obligation to arbitrate.  Similar non-severability clauses have been found to void arbitration

8

agreements in other cases as well. *See McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW,

2017 WL 4354998, at \*5 (N.D. Cal. Oct. 2, 2017) (denying motion to compel arbitration based on

non-severability provision); *Securitas Sec. Servs. USA, Inc. v. Superior Court*, 234 Cal. App. 4th

1109, 1125 (Cal. App. Ct. 2015). Accordingly, I need not consider Fleming's arguments related to

the unconscionability of the arbitration provision. Oppo. at 12-19.

In its briefing, Matco's only counterarguments were that (1) I should not consider the text

of the arbitration provision because it is the forum selection clause that is at issue and (2) the

governing law has yet to be determined. Reply at 1-4. At the hearing held on April 24, 2019,

Matco also argued (3) that because the severability provision refers to "such breaches" it only

contemplates PAGA claims. I have already disposed of Matco's first argument above. Matco's

second argument is not persuasive because the terms of the arbitration provision encapsulated in

¶¶ 12.1, 12.7, and 12.12 are clear and there is no indication that my interpretation of their plain

terms would differ under either California or Ohio law. As to the third argument, the term

"breaches" in the Distribution Agreement is defined to include "all breaches, claims, causes of

action, demands, disputes and controversies" between Fleming and Matco. Distribution

Agreement ¶ 12.1. Matco's argument that "such breaches" would mean only PAGA claims need

not be arbitrated does not make sense given how the Distribution Agreement defines "breaches."

Because the arbitration provision is void, the FAA does not preempt Cal. Bus. & Prof. Code §

20040.5 and the forum selection clause has no effect.[3]

**III.    IS CALIFORNIA BUSINESS & PROFESSIONS CODE § 20040.5**

**ENFORCEABLE?**

**A.  The Dormant Commerce Clause**

Matco claims that the Dormant Commerce Clause of the United States Constitution

---

[3] Fleming argues that in addition to Section 20040.5, the forum selection clause is also governed
by California Labor Code § 925. Mot. at 6-10. Like Section 20040.5, California Labor Code §
925 invalidates forum selection clauses in employment agreements that require employees to
arbitrate claims that arise in California outside of the state. Because Section 20040.5 is dispositive
of this motion, I need not address the parties' arguments related to California Labor Code § 925.
Additionally, because Fleming's proposed sur-reply is dedicated to argument related to California
Labor Code § 925, it is not needed and Fleming's Objection to Reply Evidence and
Administrative Motion for Leave to File Sur-Reply [Dkt. No. 25] is denied.

1   invalidates Cal. Bus. & Prof. Code § 20040.5 because it places a substantial burden on interstate

2   commerce. Mot. at 11-13. It argues that although the legislative history of the statute states that it

3   is to protect franchisees who cannot typically afford to litigate out of state, it is actually designed

4   to deprive out-of-state franchisors, which are more likely to litigate in federal court with

5   franchisees than in-state franchisors, from the protections of federal law in diversity cases. *Id.* It

6   contends that the statute has the potential to wreak havoc on out-of-state franchisors' "interest of

7   uniformity in franchise operations" because there is no assurance that the same laws, court rules,

8   and regulations will apply to their franchise agreements. *Id.* Instead, California franchisors,

9   whose contracts would typically be governed by California law and interpreted by California

10  courts, will derive a competitive advantage over out-of-state franchisors because they may rely on

11  consistent judicial interpretations of their obligations as franchisors. *Id.* It argues that the

12  legislature could have achieved its stated purpose by non-discriminatory means, such as requiring

13  franchisors to cover expenses incurred by California franchisees that are unique to litigating in the

14  designated out of state forum. *Id.*

15      Matco's argument fails. To the extent that Matco is concerned about having the same

16  laws, court rules, and regulations applied to its franchise agreements, it may always remove a case

17  filed in state court to federal court. As the Ninth Circuit has stated, "[t]he purpose of diversity

18  jurisdiction is to provide a federal forum for out-of-state litigants where they are free from

19  prejudice in favor of a local litigant." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d

20  495, 502 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77

21  (2010) (internal citation and quotation marks omitted). For this reason also, Matco's claim that

22  enforcement of Cal. Bus. & Prof. Code § 20040.5 would lead to "economic balkanization" is also

23  unpersuasive. Reply at 4-5.

24      Matco also cites *1-800-Got-Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 515 (Cal.

25  Ct. App. 2010) for the proposition that it has "interest of uniformity in franchise operations" that

26  would be harmed by application of Cal. Bus. & Prof. Code § 20040.5. Mot. at 11-13. That case

27  does not help Matco. There, the court needed to determine whether the franchise agreement's

28  choice of law provision requiring application of Washington law violated the anti-waiver

10

1    provision contained in California Franchise Relations Act ("CFRA"). 189 Cal. App. 4th at 515.

2    The court had to resolve two issues. First, was there was a reasonable basis for a choice of law

3    provision in a franchise agreement? *Id.* at 511-12. Second, was the provision contrary to a

4    fundamental public policy of California? *Id.* at 511-12.

5         Answering the first question, the court found that there was a reasonable basis because "a

6    multi-state franchisor has an interest in having its franchise agreements governed by one body of

7    law[.]" *Id.* at 515. Here, the choice of law provision is not challenged; any federal court is

8    equally well equipped to interpret California or Ohio law.

9         On the second question, the court reasoned that because the purpose of the CFRA was to

10   protect franchisees, the franchisee in its case would be better protected by Washington law than

11   California law and so the application of Washington law was not contrary to the goals of the

12   CFRA. *Id.* at 514-19. By way of example, the court actually identified Section 20040.5 as a

13   model for how the legislature could have drafted the antiwaiver provision to have the preclusive

14   effect suggested by the franchisor. *Id.* at 518. Here, the franchisee is better protected by

15   California laws.

16        *1-800-Got-Junk?* is of no help to Matco. The dormant commerce clause does not preclude

17   application of Section 20040.5 here because there is no reason to believe that a federal court

18   sitting in California cannot apply California or Ohio law, in this case, without prejudicing Matco.

19   The statute is enforceable.

20        **B. Equitable Estoppel**

21        Matco also argues that Fleming is equitably estopped from repudiating the forum selection

22   clause because his claims are inherently intertwined with the Distribution Agreement and his

23   purported employment relationship with Matco arises from the Agreement. Mot. at 13-14. This

24   argument fails because the forum selection clause is inoperative as a matter of law under Section

25   20040.5.

26   **IV.    PUBLIC AND PRIVATE FACTORS UNDER 28 U.S.C. § 1404(a)**

27        Because the forum selection clause is void pursuant to Section 20040.5, I must decide

28   whether to transfer the action under 28 U.S.C. 1404(a) "[f]or the convenience of parties and

1    witnesses [or] in the interest of justice."  In assessing a motion to transfer for convenience, the

2    court considers public factors, which go to the interests of justice, and private factors, which go to

3    the convenience of the parties and witnesses.  *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d

4    810, 820 (N.D. Cal. 2008) (Alsup, J.) (internal citation omitted).

5        **A.  Private Interest Factors**

6        "Factors relating to the parties' private interests include 'relative ease of access to sources

7    of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining

8    attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to

9    the action; and all other practical problems that make trial of a case easy, expeditious and

10   inexpensive.' " *Atl. Marine Constr. Co.*, 571 U.S. at 63 n.6 (*quoting Piper Aircraft Co. v. Reyno*,

11   454 U.S. 235, 241, n.6 (1981).  Here, the private interest factors strongly favor Fleming.

12       Matco does not dispute the following:  the Distribution Agreement was presented to

13   Fleming in California; his claims are brought pursuant to California law; courts in California are

14   more familiar with California law than Ohio courts; the action arose based on conduct in

15   California; Fleming has only worked for Matco in California and only seeks to represent

16   California distributors; the majority of witnesses are located in California; and it would be

17   significantly more expensive for Fleming to represent the interest of California-based Matco

18   distributors in Ohio.[4]  Oppo. at 23-24.  Matco makes no counterarguments, seeking to stand on the

19   forum selection clause.  Reply at 14.

20       Although Matco's corporate headquarters are in Ohio, it has hired numerous citizens of

21   California as distributors and implemented policies that allegedly violate California labor laws.

22   That it is headquartered in Ohio "does not negate the local impact of [their] decisions when they

23   are implemented elsewhere." *Karl v. Zimmer Biomet Holdings, Inc.*, No. 18-cv-04176-WHA,

24   2018 WL 5809428, at *5 (N.D. Cal. Nov. 6, 2018) (*citing Schultz v. Hyatt Vacation Marketing*

25   *Corp.*, 10-cv-04568-LHK, 2011 WL 768735, at *5 (N.D. Cal. Feb. 28, 2011).  As I have found

26

27   _____

28   [4] Fleming also contends that California Labor Code § 925 requires that California law apply to the
     instant action.  *Id.* at 24.  As noted above, because Section 20040.5 is dispositive, I decline to
     address the applicability of California Labor Code § 925 at this point.

1    that the forum selection clause is invalidated by Section 20040.5 and Matco makes no other

2    arguments in relation to its private interests here, the private interest factors identified by Fleming

3    favor denial of Matco's motion to transfer.

4         **B. Public Interest Factors**

5         "Public factors include the administrative difficulties flowing from court congestion; the

6    local interest in having localized controversies decided at home; the interest in having the trial of a

7    diversity case in a forum that is at home with the law that must govern the action; the avoidance of

8    unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness

9    of burdening citizens in an unrelated forum with jury duty." *Decker Coal Co. v. Commonwealth*

10   *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (*quoting Piper Aircraft Co.*, 454 U.S. at 241 n.6).

11   The public interest factors slightly favor Fleming.

12        The parties disagree if the relative court congestion between here and the Northern District

13   of Ohio weighs for or against transfer. Mot. at 16; Oppo. at 25. Matco points out that as of March

14   31, 2018, there were 4,700 civil cases pending in the Northern District of Ohio and 8,502 civil

15   cases pending in this district. Mot. at 16. It also notes that in its 2018 Annual Assessment, the

16   Northern District of Ohio reported that total civil case filings decreased by 13.8% from 2016 to

17   2017. *Id.* Fleming counters that under Ninth Circuit caselaw, "[t]he real issue is not whether a

18   dismissal [or transfer] will reduce a court's congestion but whether a trial may be speedier in

19   another court because of its less crowded docket" and the median time from filing to disposition in

20   civil cases is 7 months in this district compared to 10.3 months in the Northern District of Ohio.

21   Oppo. at 24 (*citing Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). Matco

22   counters that the median time from filing to trial is more than eight months longer in this district

23   than the Northern District of Ohio. Reply at 13. This factor, which is seldom informative, is

24   neutral.

25        Fleming argues that the public interest in adjudicating local controversies lies here because

26   Matco presented Fleming the Distribution Agreement in California; Fleming worked for Matco

27   solely in California; and Matco employs over a hundred of other drivers in California. Oppo. at

28   25. In contrast, he and other putative plaintiffs have no connection to Ohio. *Id.* Matco responds

13

1    that Ohio has an equivalent interest given that Matco is headquartered there and negotiated

2    contracts containing choice of law and forum selection clauses that point to Ohio law and Ohio as

3    a forum respectively.  Mot. at 16.  At most, this factor is neutral as well, if not slightly favoring

4    Fleming and California as the forum because the purpose of Section 20040.5 is to protect

5    franchisees from being forced to litigate claims based on a franchise agreement out of state.

6            The final factor is familiarity with the underlying law.  Fleming contends that Ohio law has

7    no corollary to most of Fleming's claims, no statute similar to PAGA, no statute similar to

8    California Labor Code § 2802, no daily overtime, and no meal and rest breaks.  Oppo. at 25.

9    Matco replies that because the governing law remains an open question this factor is neutral.

10   Reply at 13-14.  Further, federal judges routinely apply the law of other states than the one in

11   which they sit.  *Id.* (*citing Rowen v. Soundview Commc'ns, Inc.*, No. 14-cv-05530-WHO, 2015 WL

12   899294, at *7 (N.D. Cal. Mar. 2, 2015)).  I agree with Matco, and this factor is neutral.

13           Here the private factors, to a great degree, and the public factors, to a much lesser extent,

14   favor Fleming.  Matco has failed to meet the factors outlined in 28 U.S.C. 1404(a).  I deny its

15   alternative motion to transfer.

16                                        **CONCLUSION**

17           Matco's motion to dismiss is denied because by the Distribution Agreement's own terms,

18   the arbitration provision is invalid and Section 20040.5's prohibition of forum selection clauses in

19   franchise agreements restricting venue to a forum outside California is not preempted by the FAA.

20   I deny the motion to transfer.  Matco shall answer the complaint within 15 days.

21           **IT IS SO ORDERED.**

22   Dated: May 3, 2019

23   _____

24   William H. Orrick
     United States District Judge

25

26

27

28

                                            14