1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RUKIN HYLAND & RIGGIN LLP**
Peter Rukin (SBN 178336)
Jessica Riggin (SBN 281712)
Valerie Brender (SBN 298224)
1939 Harrison Street, Suite 290
Oakland, CA 94612
Tel: (415) 421-1800
Fax: (415) 421-1700
Email: prukin@rukinhyland.com
Email: jriggin@rukinhyland.com
Email: vbrender@rukinhyland.com

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiff,
JOHN FLEMING

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FLEMING, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>MATCO TOOLS CORPORATION, a Delaware corporation; NMTC, INC. d/b/a MATCO TOOLS, a Delaware corporation, FORTIVE CORPORATION, a Delaware corporation; and DOES 1-20, inclusive,<br><br>    Defendants. | Case No.: 3:19-cv-00463-WHO<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>**Date**: April 27, 2022<br>**Time**: 2:00 p.m.<br>**Courtroom**: 2, 17th Floor<br><br>**Judge**: Hon. William H. Orrick<br><br>**Action Filed**: January 25, 2019 |

NOTICE OF MOTION AND MOTION TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 27, 2022 at 2:00 p.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable William Orrick in Courtroom 2, 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff John Fleming will and hereby does move this Court for an order to award Class Counsel attorneys' fees and reimbursement for litigation expenses and to award payment to John Fleming, Simon Goro, and Emanuel Aguilera for their services to the Class.

This motion is based on this Notice of Motion and Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards, the following Memorandum of Points and Authorities in Support Thereof, the Declarations (and exhibits thereto) of Peter Rukin, Alex Tomasevic, John Fleming, Simon Goro, Emanuel Aguilera, David Lowe, Aaron Kaufmann, and Todd Jackson in Support of the Motion, oral argument of counsel, all other pleadings and papers on file in this action, and such additional matters as the Court may consider.

Dated: March 14, 2022

**RUKIN HYLAND & RIGGIN LLP**

By:   */s/ Peter Rukin*
　　　Peter Rukin
　　　Jessica Riggin
　　　Valerie Brender

**NICHOLAS & TOMASEVIC, LLP**

By:   */s/ Shaun Markley*
　　　Craig M. Nicholas
　　　Alex Tomasevic
　　　Shaun Markley

　　　Attorneys for Plaintiff,
　　　JOHN FLEMING

## TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................................1

II.  PROCEDURAL BACKGROUND AND CLASS COUNSEL'S EFFORTS ........................2

III.  SERVICE OF FLEMING, GORO, AND AGUILERA ...........................................4

IV.  THE REQUESTED ATTORNEY'S FEES AWARD IS APPROPRIATE ...........................5

    A.  LEGAL STANDARDS APPLICABLE TO FEE AWARDS. ....................................5

    B.  AN AWARD OF 25 PERCENT OF THE SETTLEMENT VALUE IS
       JUSTIFIED HERE. .............................................................................................6

       1.  THE RESULT ACHIEVED JUSTIFIES THE FEE REQUEST. .........................7

       2.  THE LITIGATION INVOLVED SUBSTANTIAL RISK. ..................................9

       3.  CLASS COUNSEL HAVE BORNE THE FINANCIAL BURDEN OF
          LITIGATION ON A CONTINGENCY BASIS....................................................9

       4.  COUNSEL OBTAINED SIGNIFICANT NON-MONETARY
          BENEFITS FOR CURRENT DISTRIBUTORS..................................................10

       5.  A COMMON FUND FEE BETWEEN 25% AND 30% IS
          CONSISTENT WITH COUNSEL'S EXPECTATIONS AND
          CUSTOMARY IN THIS TYPE OF WAGE AND HOUR LITIGATION ..........12

    C.  CLASS COUNSEL'S LODESTAR SUPPORTS THE FEE REQUEST. ...............13

V.  THE COURT SHOULD AWARD THE REQUESTED COSTS ........................................17

VI.  THE REQUESTED SERVICE AWARDS ARE WARRANTED ......................................18

VII.  CONCLUSION .............................................................................................................20

1

# TABLE OF AUTHORITIES

2

Page(s)

3
**Federal Cases**

4
*Alvarez v. Farmers Ins. Exchange*,
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ............................................................ 10

5

6
*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................. 12

7
*Barjon v. Dalton*,
   132 F.3d 496 (9th Cir. 1997) .................................................................................. 14

8

9
*Bautista v. Harvest Mgmt. Sub LLC*,
   No. CV 1210004 FMO (CWx), 2013 WL 12125768 (C.D. Cal. Oct. 16, 2013) ......................... 20

10

11
*Boyd v. Bank of Am. Corp.*,
   No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .............................. 8, 10

12
*Buccellato v. AT & T Operations, Inc.*,
   No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) .................................... 16

13

14
*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) .................................................................................. 14

15

16
*Chambers v. Whirlpool Corp.*,
   214 F. Supp. 3d 877 (C.D. Cal. 2016) ........................................................................ 19

17
*Chen v. Chase Bank USA, N.A.*,
   2020 WL 3432644 (N.D. Cal. June 23, 2020) ............................................................... 17

18

19
*Ching v. Siemens Indus., Inc.*,
   No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ................................... 6

20

21
*Contreras v. Armstrong Flooring, Inc.*,
   Case No. CV 20-3087 PSG (SKx), 2021 WL 4352299 (C.D. Cal. July 6, 2021) ....................... 17

22
*Cunningham v. Cty. of Los Angeles*,
   879 F.2d 481 (9th Cir. 1988) .................................................................................. 13

23

24
*Deluca v. Farmers Ins. Exch.*,
   No. 17-CV-00034-TSH, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ................................. 12

25

26
*Elliott v. Rolling Frito-Lay Sales, LP*,
   No. SACV 11-01730 DOC, 2014 WL 2761316 (C.D. Cal. June 12, 2014) ................................ 6

27
*Fernandez v. Victoria Secret Stores, LLC*,
   No. CV 06-04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ........................... 17

28

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) ........................................................................ 13

*Fleming v. Matco Tools Corporation*,
  384 F.Supp.3d 1124 (N.D. Cal. May 3, 2019) ................................................. 2

*Freeze v. PVH Corp.*,
  No. CV 19-1694 PSG (EX), 2021 WL 2953161 (C.D. Cal. Jan. 7, 2021)................... 17

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .............. 18

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009) .................................................................. 13

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007).................... 19

*Graham v. Overland Sols., Inc.*,
  No. 10-CV-0672 BEN BLM, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012)........... 18

*Gutierrez-Bejar v. SOS Int'l, LLC*,
  No. LACV1609000JAKJEMX, 2019 WL 5683901 (C.D. Cal. Nov. 1, 2019)........... 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................. 6, 13

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .......................................................................... 17

*Hopkins v. Stryker Sales Corp.*,
  No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .................. 16

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................. passim

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
  109 F.3d 602 (9th Cir. 1997) ....................................................................... 13

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)................... 10

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ............... 19

*In re Matco Tools Corporation*,
  781 Fed.Appx. 681 (9th Cir. Oct. 25, 2019)..................................................... 2

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................... 16

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014).................................................................................................. 20

*Kang v. Wells Fargo Bank, N.A.*,
   No. 17-CV-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021)...................................... 16

*Laguna v. Coverall N. Am., Inc.*,
   753 F.3d 918 (9th Cir. 2014)....................................................................................................... 10

*Lazarin v. Pro Unlimited, Inc.*,
   No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ......................................... 16

*Lourdes Lefevre v. Five Star Quality Care, Inc.*,
   Case No. 5:15-cv-01305-VAP-SPx, 2021 WL 2389884 (C.D. Cal. Jan. 7, 2021) ..................... 16

*Matco Tools Corporation v. United States District Court for Northern District of California*,
   140 S.Ct. 2806 (2020) .................................................................................................................. 2

*McCown v. City of Fontana*,
   565 F.3d 1097 (9th Cir. 2009) ...................................................................................................... 7

*McLeod v. Bank of Am., N.A.*,
   No. 16-CV-03294-EMC, 2019 WL 1170487 (N.D. Cal. Mar. 13, 2019) .................................... 16

*Pierce v. Rosetta Stone, Ltd.*,
   No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ........................................ 8

*Rabin v. PricewaterhouseCoopers LLP*,
   Case No. 16-cv-02276-JST, 2021 WL 837626 (N.D. Cal. Feb. 4, 2021) .................................... 19

*Rippee v. Bos. Mkt. Corp.*,
   No. 05CV1359 BTM(JMA), 2006 WL 8455400 (S.D. Cal. Oct. 10, 2006) ............................... 16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................................................... 18

*Sayaman v. Baxter Healthcare Corp.*,
   No. CV 10-1049-VBF(JEMX), 2011 WL 13213580 (C.D. Cal. Mar. 21, 2011) ....................... 19

*Singer v. Becton Dickinson & Co.*,
   No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010)................................. 10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................................... 6, 18

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ............................................................................................... 16

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016)..................................................................................................... 10

*Taylor v. Shippers Transport Express, Inc.*,
    2015 WL 12658458 (C.D. Cal. May 14, 2015) ............................................................... 8

*Torres v. Pick-A-Part Auto Wrecking*,
    No. 116-CV-01915 DAD (BAM), 2018 WL 306287 (E.D. Cal. Jan. 5, 2018) ......................... 19

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ....................................................................................... 14

*Uschold v. NSMG Shared Servs., LLC*,
    No. 18-CV-01039-JSC, 2020 WL 3035776 (N.D. Cal. June 5, 2020) ................................. 16

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ................................................................................... 13

*Vedachalam v. Tata Consultancy Servs., Ltd*,
    No. C 06-0963 CW, 2013 WL 3929129 (N.D. Cal. July 18, 2013) .................................... 19

*Villalpando v. Exel Direct Inc.*,
    No. 3:12-CV-04137-JCS, 2016 WL 7740832 (N.D. Cal. Dec. 9, 2016) ............................... 8

*Villalpando v. Exel Direct Inc.*,
    No. 12-CV-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) ................................ 8

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................................... passim

*Wannemacher v. Carrington Mortg. Servs., LLC*,
    No. SACV 122016 FMO (ANx), 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ................. 19

**State Cases**

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
    48 Cal. 3d 341 (1989) .................................................................................................. 3

**Federal Rules**

Fed. R. Civ. P. 23(h) ......................................................................................................... 5
Fed. R. Civ. P. 30(b)(6) ..................................................................................................... 3

**Other Authorities**

Conte & Newberg, Newberg on Class Actions § 14:6, p. 551 (4th Ed. 2002) ....................... 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff John Fleming ("Plaintiff") hereby moves for an award of attorneys' fees, litigation costs, and service awards in connection with the Class and PAGA settlement of wage and hour claims preliminarily approved by the Court on January 20, 2022.  *See* Dkt. 104.

The requested fees, costs, and service awards are appropriate considering the substantial benefits obtained for the Class and the State of California, and the work performed by Plaintiff, Simon Goro, Emanuel Aguilera, and Class Counsel. Plaintiff seeks a fee award of $3,950,962.50, which constitutes 25 percent of the Settlement fund (cash and debt forgiveness), consistent with the Ninth Circuit benchmark. The requested award is reasonable and justified in light of Class Counsel's lodestar and the fact that counsel have been litigating this case for years on a contingency basis without any assurance that they would ever be paid for their work. Class Counsel's success in creating a Settlement worth $15,803,850 for 294 franchise Distributors justifies the fee award sought here.

The requested fee award is also appropriate because the Settlement—the result of years of hard-fought litigation and extensive arms-length negotiations—constitutes an extraordinary financial result for the Class in the face of formidable hurdles. Although this Court granted class certification of certain claims, the parties were preparing cross-motions for summary judgment at the time this Settlement was reached. There was thus a risk that Plaintiff would not have prevailed at summary judgment—and even if Plaintiff prevailed at the summary judgment stage, the Class faced significant risks proving their claims in a classwide trial with competent classwide evidence. In the face of these obstacles, Plaintiff negotiated a gross financial settlement of $15,803,850, comprised of a $13,500,000 cash payment and $2,303,850 in debt forgiveness, resulting in 294 individual settlement payments with an average net cash value of nearly $35,000 and an average total net value (cash and debt relief combined) of over $42,000 per Class Member.  The Settlement also includes amendments to participating Class Members' Distributorship Agreements. Given all of these circumstances, the fee and cost requests are reasonable and appropriate.

Finally, the requested service awards are well-deserved. The declarations of Plaintiff,

1  Emanuel Aguilera, and Simon Goro in support of this motion show their significant commitment of

2  time, sacrifice, and service on behalf of the Class. The meaningful recovery here would simply not

3  have been possible but for their initiative, courage, and efforts.

4  **II.      PROCEDURAL BACKGROUND AND CLASS COUNSEL'S EFFORTS**

5         This exceptional Settlement is the result of three and a half years of work by Class Counsel.

6  After a period of fact-finding and research, in November of 2018, Plaintiff and his counsel drafted

7  and sent their formal Private Attorneys' General Act ("PAGA") notice to the California Labor &

8  Workforce Development Agency (LWDA) detailing the provisions of the Labor Code that Matco

9  allegedly violated, including the facts and theories to support the violations. Rukin Decl., ¶ 7. The

10  time limit for the LWDA to respond to the notice expired, and Plaintiff filed his class and

11  representative PAGA action in January of 2019, asserting claims arising from his alleged

12  misclassification, including (1) unreimbursed business expenses; (2) unlawful deductions; (3) unpaid

13  overtime compensation; (4) missed meal and rest breaks; (5) improper wage statements; (6) waiting

14  time penalties; (7) violation of the UCL; and (8) penalties pursuant to the PAGA.  *Id.*

15         Matco moved to dismiss, or in the alternative, transfer venue to the Northern District of Ohio,

16  citing its dispute resolution agreement that contained an arbitration clause and Ohio venue and choice

17  of law clauses. Dkt. 16.  Plaintiff opposed and argued that the agreement was unenforceable because

18  a) it contained an unenforceable collective action/PAGA waiver and b) it also contained a blow-up

19  clause that, by its own terms, rendered the entire dispute resolution agreement unenforceable in the

20  event that the PAGA waiver was unenforceable.  This Court agreed with Plaintiff and denied Matco's

21  motion. *Fleming v. Matco Tools Corporation*, 384 F.Supp.3d 1124 (N.D. Cal. May 3, 2019). Matco

22  filed a petition for a writ of mandamus. The writ was denied in a memorandum opinion on October

23  25, 2019. *In re Matco Tools Corporation*, 781 Fed.Appx. 681 (9th Cir. Oct. 25, 2019). Matco then

24  moved for rehearing en banc, which the Ninth Circuit denied.  Matco then filed a petition for a writ

25  of certiorari to the U.S. Supreme Court which was also denied. *Matco Tools Corporation v. United

26  States District Court for Northern District of California*, 140 S.Ct. 2806 (2020).

27         Matco then tried again to enforce its dispute resolution agreement and, specifically, to have

28  Ohio substantive law applied to this dispute. In September of 2020, Matco filed a "Motion to Apply

- 2 -

1    Ohio Law, or in the Alterative, Stay the Case." Dkt. 55. Plaintiff opposed.  The Court again agreed

2    with Plaintiff and denied Matco's motion.  Dkt. 62.[1]

3          Plaintiff then moved for class certification (Dkt. 58), and on February 21, 2021, this Court

4    granted Rule 23 certification of the Plaintiff's expense reimbursement, wage statement, and UCL

5    claims. *See* Dkt. 71.

6          In May 2021, Matco moved for judgment on the pleadings and to strike Plaintiff's PAGA

7    claim to the extent it sought penalties for unpaid overtime as well as meal and rest periods, on the

8    ground that a trial of the outside sales exemption's applicability would be unmanageable. Plaintiff

9    opposed and on July 9, 2021, this Court denied Matco's motion in part and granted it in part. *See*

10   Dkt. 89.  The parties then began preparing cross-motions for summary judgment on the issue of

11   employment status.  Rukin Decl., ¶ 10.

12         The parties engaged in substantial, in-depth discovery and investigation throughout the

13   course of this motion practice. After the parties' initial disclosures, there was substantial written

14   discovery on both sides. For example, Plaintiff served two sets of interrogatories and four sets of

15   document requests, in response to which Matco produced tens of thousands of pages of documents

16   that Class Counsel reviewed.  Rukin Decl., ¶ 11.  The parties also completed nine party and non-

17   party depositions, including of Plaintiff, of other Matco Distributors, and of Matco (via Fed. R. Civ.

18   P. 30(b)(6)).  *Id.*  Matco also served substantial discovery on Plaintiff and other Distributors, to which

19   Class Counsel facilitated document production and responses.  *Id.*

20         The parties attempted settlement at multiples junctures in this case.  They first attended a

21   full-day mediation in May 2020 with mediator Jeffrey Ross, Esq. which was ultimately

22   unsuccessful. Rukin Decl., ¶ 12. Following the various motions and related orders noted above, the

23   parties agreed to a second mediation with Jeffrey Wohl, Esq., an experienced mediator and

24   member of this Court's mediation panel. *Id.* The mediation was conducted on August 17, 2021.

25   _____

26   [1] Matco also moved for a stay pending the California Supreme Court's decision in *Vazquez v. Jan-*
     *Pro Franchising Int'l Inc.*  Plaintiff opposed and the Court denied that request as well.  Dkt. 62
27   ("Matco fails to carry its heavy burden of demonstrating that the California Supreme Court's pending
     decision in *Vazquez* warrants a stay at this stage, because Fleming seeks class certification no matter
28   whether the ABC test from *Dynamex* or the alternative test from *S. G. Borello & Sons, Inc. v. Dep't*
     *of Indus. Relations*, 48 Cal. 3d 341 (1989) applies.)

The parties agreed on certain terms at the mediation and continued their settlement discussions over the course of several weeks following mediation, and on November 18, 2021, the parties executed a formal Settlement Agreement. *Id.* Plaintiff then moved for preliminary approval of the settlement, which this court granted on January 20, 2022. *See* Dkt. 104.

## III.    SERVICE OF FLEMING, GORO, AND AGUILERA

Plaintiff Fleming, as well as Class Members Simon Goro and Emanuel Aguilera, were instrumental in settling this matter on terms favorable to the Class.

Fleming worked as a Distributor for Matco from July 2012 through December 2018 in Salinas Valley, California. Fleming Decl., ¶ 1. Fleming took on the role of class representative and named Plaintiff in late 2018. *Id.* at ¶¶ 10-11. As class representative, Fleming has been actively involved in this litigation, has remained in regular contact with Class Counsel, and has provided input and advice to Class Counsel throughout this litigation, including investigating the case pre-filing; working on initial disclosures; gathering and producing over 7,000 pages of documents; preparing for and sitting for a full-day deposition; assisting with Plaintiff's motion for class certification; and attending two mediations. *See id.* In total, Fleming estimates that he spent nearly 140 hours assisting with this case as class representative. *Id.* at ¶ 21.

Goro and Aguilera are former Matco Distributors and Class Members who also previously filed a misclassification lawsuit against Matco making largely the same claims as those at issue in this lawsuit. In light of the pending *Fleming* action, on March 22, 2019, Aguilera and Goro voluntarily dismissed their lawsuit against Matco. *See Aguilera, et al. v. Matco Tools Corporation,* Case No. 3:19-CV-00321-YGR.  Following the dismissal, and despite this Court's prior ruling that its dispute resolution provision was unenforceable as written, Matco instituted arbitration actions against Aguilera and Goro, along with their wives who also signed the Franchise Agreements, in Ohio.  Goro Decl., ¶¶ 5, 7-8; Aguilera Decl., ¶¶ 5, 7-8.  Matco also separately filed a Petition against Goro and Aguilera in federal court in Ohio seeking a determination regarding the validity of Matco's arbitration agreement, i.e. seeking the opposite ruling handed down by this Court. *Matco Tools Corporation v. Aguilera, et al.,* Case No. 5:19-cv-641-PAB (N.D. Ohio), Dkt. 1. Aguilera and Goro were accordingly forced to file an action in federal court in California seeking a

declaratory judgment that the arbitration and forum selection clauses contained in the Distributorship Agreements were unenforceable and seeking injunctive relief preventing Matco from proceeding with the arbitration actions. *See Emanuel Aguilera, et al. v. Matco Tools Corporation*, Case No. 19-cv-1576-AJB-AGS, Dkt. 1.  Matco moved to dismiss that complaint; Goro and Aguilera opposed and also filed a motion for preliminary injunction.  Plaintiffs largely prevailed on the motion to dismiss, *id.* at ECF No. 34, and they then obtained a favorable preliminary injunctive relief order finding that they were likely to succeed on the merits of their claim for a declaratory judgment (i.e. to stop Matco from trying to assert the arbitration clause). *Id.* at Dkt. 34. Then, separately, the Ohio court denied Matco's petition to compel arbitration. *Matco Tools Corporation v. Aguilera, et al.,* Case No. 5:19-cv-641-PAB at Dkt. 26 (memorandum opinion and order denying petition to compel arbitration). The parties agreed to close the arbitration matters and dismiss the injunctive relief action. *See id.* at Dkt. Nos. 55-56; Tomasevic Decl., ¶ 20.

Aguilera and Goro participated in the *Fleming* action as well. *See generally* Goro Decl., ¶¶ 10-15; Aguilera Decl., ¶¶ 10-15. They each submitted declarations in support of the class certification motion (*see* Dkts. 58-31 and 58-32); sat for a full day deposition and participated in discovery in this case; and shared documents and information with Class Counsel in connection with the prosecution of this matter. Goro Decl., ¶¶ 11-13; Aguilera Decl., ¶¶ 11-13. In total, Aguilera and Goro estimate they spent 56 and 60 hours on this matter respectively. Goro Decl., ¶ 15; Aguilera Decl., ¶ 15.

Fleming, Aguilera, and Goro are signatories to the Settlement Agreement. *See* Rukin Decl., ¶ 16. They have agreed to sign a full release of their claims against Defendants in connection with the settlement to bring a full and final resolution of the claims at issue in this case. *Id.* The Settlement Agreement permits Fleming, Aguilera, and Goro to seek a service award in connection with their efforts to prosecute this case and in recognition of their broader release of all claims.

## IV.     THE REQUESTED ATTORNEY'S FEES AWARD IS APPROPRIATE

### A.     Legal Standards Applicable to Fee Awards.

Fed. R. Civ. P. 23(h) authorizes the Court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

In making a fee award, a district court must "assure itself that the fees awarded in the agreement [are] not unreasonably high, so as to ensure that the class members' interests [are] not compromised in favor of those of class counsel" or class representatives. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Factors considered in examining the reasonableness of the fee include: (1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyers' "reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

In calculating the reasonable attorney's fees, district courts have discretion to choose between a lodestar method or a "percentage method." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Where, as here, a fund has been created, an award of fees on percentage basis is the norm. "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (describing "significant benefits to the percentage approach"). As the Ninth Circuit has recognized, "since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the [district] court need not inquire into the reasonableness of the fees at even the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton*, 327 F.3d at 966.

This Circuit has established 25% of the common fund as a benchmark award for attorney fees. *Staton*, 327 F.3d at 968 (quoting *Hanlon*, 150 F.3d at 1029). An award of 25 percent of the common fund is "presumptively reasonable." *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014) (citing *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 942).

**B.    An Award of 25 percent of the Settlement Value is Justified Here.**

Here, Plaintiff's requested fee award of $3,950,962.50 is reasonable and appropriate.

Indeed, while the relevant *Vizcaino* factors would likely support an *upward adjustment* from the benchmark, Plaintiff does not request a fee award greater than the benchmark. Rather he seeks the benchmark 25%, which is currently a 2.3 multiplier on the lodestar reported by Class Counsel. As discussed below, the request should be granted.

### 1.  The Result Achieved Justifies the Fee Request.

The reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Here, compensation less than the 25 percent benchmark would undercompensate counsel for the result they have achieved for the Class.

To begin with, there is no reasonable dispute that the Settlement constitutes an exceptional result for the Class. The deal was negotiated after a hard-fought successful effort to certify the Class, and against the backdrop of multiple procedural and merits challenges confronting Plaintiff, at which Plaintiff prevailed at each stage. Rukin Decl. ¶¶ 8-10.

Further, Class Counsel have represented thousands of employees in dozens of wage/hour class actions like this one, and submit that, based upon their significant experience litigating wage and hour cases, the Settlement is an outstanding recovery and result for the Class. Rukin Decl. ¶ 17; Tomasevic Decl. ¶ 5. This Settlement—where individual settlement payments to 294 Class Members have an average net cash value of nearly $35,000 each and an average total net value (cash and debt relief combined) of over $42,000 per Class Member—also compares favorably with other approved wage-and-hour class-action settlements—including independent contractor misclassification cases—in this Court and Circuit. By way of example, on March 4, 2022, plaintiffs received final settlement approval of their independent contractor misclassification lawsuit in *Alfred v. Pepperidge Farm*, CV14-07086-JAK (C.D. Cal.), in which the average net per class member payout was approximately $18,000. *See* Rukin Decl. ISO Motion for Preliminary Approval, Dkt. 71-2. In *Villalpando v. Excel Direct*, 3:12-cv-04137-JCS, after years of hard-fought litigation, following summary judgment in favor of plaintiffs on the issue of employee misclassification, and on the eve of a damages trial, plaintiffs negotiated a class settlement of independent contractor misclassification claims on behalf of a class of 383 drivers that resulted in

an average net settlement payment of $23,500. *See, e.g., Villalpando v. Exel Direct Inc.*, No. 12-CV-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) (order granting summary judgment for plaintiffs); *Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7740832 (N.D. Cal. Dec. 9, 2016) (final approval of settlement). In contrast, the average net settlement payment here is nearly double that of *Alfred v. Pepperidge Farm* and more than 50 percent greater than *Villalpando. See also Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *5–7, 10 (C.D. Cal. Nov. 18, 2014) (in a class action employment dispute, finding that a gross settlement of $5.8 million, with an average payout of $10,840 per class member and a maximum recovery of $30,000, was greater than the results achieved in similar cases and justified a fee award of one-third of the overall settlement); *Taylor v. Shippers Transport Express, Inc.*, 2015 WL 12658458, at * 10 (C.D. Cal. May 14, 2015) (in independent contractor misclassification case, settlement approved resulting in average of $13,100 payment per class member after deduction of fees); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *4 (N.D. Cal. Sept. 26, 2013) (in misclassification case, settlement of $600,000, recovery of $3,890.63 for California claimants and $2,964.29 for FLSA claimants).

This conclusion is also supported by a study published online by NERA Economic Consulting. The study (originally published in 2015 and updated in 2019) evaluated patterns in 987 wage and hour settlements from January 2007 through December 2019.  Rukin Decl. ¶ 15: Exh. A.  The authors found that 36% of cases had an average settlement value per class member between $1000 and $4999.  *See id.* at p. 11.  The study further found that the overall average settlement value per class member was $7,755, and the average settlement value per class member per year was approximately $1,000. *Id.* at pp. 7, 10.7F[2] The NERA study confirms the exceptional resolution in this case.

Still further, to date, no Class Member has opted-out or objected to the Settlement, confirming this is a positive and well-received result for the Class.[3]

---

[2] It is not clear whether the average payout amounts identified in the NERA study are before or after payment of fees and costs.

[3] The deadline to opt-out or object is April 7, 2022; Plaintiff will update the Court further on Class Members' response to the Settlement in his Motion for Final Approval.

1

2. The Litigation Involved Substantial Risk.

2

3

4

5

6

7

8

9

10

11

12

13

14

This case is not one in which a substantial settlement and a recovery of an attorney's fee were foregone conclusions. To begin with, the factual and legal issues in this case were complex and presented unique challenges. Independent contractor misclassification is still a developing area of the law, and numerous legal questions going to merits and damages issues remain unresolved. Although Plaintiff believes that the documents produced in discovery and information revealed during depositions support Plaintiff's allegation that Matco misclassified its Distributors as independent contractors, a finder of fact could conclude that Distributors were properly classified as independent contractors. Indeed, as described earlier, the parties were preparing cross-motions for summary judgment on the issue of employment status when they reached this Settlement. Without conceding that any adverse conclusions would be correct or appropriate, Plaintiff recognizes the risk of possible negative outcomes, including risks of not prevailing at trial on a classwide basis. This Settlement avoids that uncertainty, while ensuring that Class Members receive substantial consideration now for a release of their claims.

15

16

3. Class Counsel Have Borne the Financial Burden of Litigation on a
Contingency Basis.

17

18

19

20

21

22

23

24

25

26

27

It has been a long-recognized principle that an attorney merits a significantly larger fee when the compensation is contingent, rather than being fixed on a time or contractual basis. *See Vizcaino*, 290 F.3d at 1048–51. During the more than three years this case has been pending, Class Counsel have poured enormous resources into its active litigation. They took and defended numerous depositions and spent thousands of hours of attorney time litigating and preparing the case for class certification and dispositive motions. Class Counsel also began to retain and pay an expert in preparation for dispositive motions and trial. Counsel's fronted costs exceed $50,000. Since the case has resolved, Class Counsel have performed additional work, including negotiating the terms of Settlement; successfully moving for preliminary approval; and responding to questions from Class Members. Class Counsel will continue to do so until all Settlement funds are paid, and the case is closed. Rukin Decl. ¶ 13.

28

This significant commitment of time and money has been completely at risk and wholly

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

dependent upon obtaining a substantial recovery for the Class. *See* Rukin Decl. ¶¶ 35-6; Tomasevic Decl. ¶¶ 41-42. Class Counsel's assumption of these risks supports the requested fee award. *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (risk of nonpayment a factor warranting upward adjustment in lodestar fee award); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("Plaintiffs' counsel proceeded entirely on contingency basis, while paying for all expenses incurred. There was no guarantee of any recovery, and thus, counsel was subjected to considerable risk of no compensation for time or no reimbursement for expenses."); *see also, e.g.*, *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8–9 (S.D. Cal. June 1, 2010), 2010 WL 2196104, at *8-9 (awarding one-third of common fund where, among other factors supporting the upward departure, "class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it for more than two years").[4]

Further, in addition to a risk of no recovery, Class Counsel bore the risk that any resolution of the case would have been on less favorable terms, and that a fair and reasonable common fund settlement could have compensated Class Counsel at a rate far below their lodestar. As the Court is aware, this risk is not hypothetical for the undersigned counsel. *See, e.g., Alvarez v. Farmers Ins. Exchange*, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) (Orrick, J.) (approving award of attorneys' fees in class settlement resulting in a fee recovery of approximately 50 percent of Class Counsel's lodestar).

### 4.  Counsel Obtained Significant Non-Monetary Benefits for Current Distributors.

The fact that benefits to the class are not limited to the settlement fund itself is an additional justification for awarding an upward departure from the benchmark. *See Vizcaino*, 290 F.3d at 1049 ("Non-monetary benefits" to the Class are "a relevant circumstance" in the fee analysis); *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 941–42 (citing *Laguna v. Coverall N.*

---

[4] Class Counsel's risk was enhanced by the fact that they are small firms with fewer than fifteen attorneys, such that the time and expenses incurred imposed a significantly greater proportional burden. *See Boyd*, 2014 WL 6473804 at *10 (awarding increase from the benchmark rate where class counsel were small firms of fewer than 15 attorneys which "face even greater risks in litigating large class actions with no guarantee of payment").

*Am., Inc*., 753 F.3d 918, 923 (9th Cir. 2014), vacated on other grounds, *Laguna v. Coverall N. Am*., *Inc*., 772 F.3d 608 (9th Cir. 2014)) (court considers that a settlement contains significant benefits for plaintiffs beyond the cash recovery, in determining whether to approve settlement and fees requested).

In addition to the cash settlement and debt relief, Plaintiff and Class Counsel have secured beneficial changes for current Distributor Class Members. Participating Class Members who are Current Distributors will obtain an amended Distributorship Agreement that provides Current Distributors with certain new rights with respect to their territories, and in many instances, decreases Matco's control over Current California Distributors through the addition or subtraction of numerous contractual provisions, including but not limited to:

• Adding procedures though which a Distributor can ask Matco to modify the Distributor's customer list (i.e. "List of Calls") and Matco's promise to not "unreasonably withhold consent to modify the List of Calls." (SA, § 1.2[5]);

• Adding procedures through which a Distributor can request to sell non-competing products through their distributorship and Matco's promise not to unreasonably withhold permission to sell such products.  (SA, § 3.2);

• Adding that "pricing of products" is the Distributor's sole prerogative and that should Matco wish to implement discount, incentive, or coupon programs for end customers, then Matco will compensate the Distributor accordingly for his or her participation in those programs.  (SA, §§3.12, 6.2); and

• Adding a provision stating that Distributors "have the right to sell [their] Distributorship" and Matco's promise to not unreasonably withhold consent to sell the Distributorship.  (SA, § 10.1).

The Amended Distributorship Agreement also amends Matco's dispute resolution procedures, including arbitration and forum selection clauses in prior versions of its Distributorship Agreements—some of which this Court previously deemed unenforceable (*see* Dkt. 35).  The new dispute resolution procedures remedy the issue identified by this Court by eliminating the PAGA

---

[5] The Settlement Agreement ("SA") can be located at Dkt. 97-1, Exh. 1.

waiver (SA, § 12.5) and also change other provisions to make Matco's dispute resolution procedures fairer to Distributors.  These changes include (1) changing the governing law of the Distributorship Agreement, including its arbitration provision, to that of California – these Distributors' home state - as opposed to Ohio law, as had previously been the case (SA, § 12.1); (2) changing the "Venue and Jurisdiction" clause to adopt California as the appropriate forum for disputes, as opposed to Matco's home state of Ohio; (3) eliminating the "limitation of actions" provision which previously gave Distributors as little as one year upon which to bring any accrued claim (SA, § 12.3); (4) limiting the application of the arbitration clause to only the Distributor him or herself and any spouse also executing the Distributor Agreement (as opposed to, as previously was the case, extending the arbitration clause to all "immediate family members" of the principal Distributor) (§ 12.1); (5) deleting the prior "Limitation of Damages" provision which had sought to preclude any award of punitive or consequential damages; and (6) adding that Matco shall pay for all costs unique to arbitration, whereas previously the Distributor was to share equally in any arbitration costs. Moreover, Distributors have the right to opt out of the new dispute resolution provisions.  Those who do not opt out will receive a $5,000 payment. SA, §5.5.1(d).

These non-monetary benefits support the requested fee award.

### 5.  A Common Fund Fee Between 25% and 30% is Consistent With Counsel's Expectations and Customary in This Type of Wage and Hour Litigation.

While the Ninth Circuit uses 25 percent of the fund as the presumptively reasonable "benchmark" for awarding fees, *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 942, it also recognizes that 20 to 30 percent is the "usual range" for common fund fee recoveries. *Vizcaino*, 290 F.3d at 1047. It is not unusual for district courts to award attorneys' fees in excess of the benchmark for settlements involving wage and hour claims. See, e.g., *Deluca v. Farmers Ins. Exch.*, No. 17-CV-00034-TSH, 2020 WL 5071700, at *7 (N.D. Cal. Aug. 24, 2020) (awarding 30% of common fund in wage and hour class settlement); *Gutierrez-Bejar v. SOS Int'l, LLC*, No. LACV1609000JAKJEMX, 2019 WL 5683901, at *10 (C.D. Cal. Nov. 1, 2019) (awarding 29.33% of fund in independent contractor misclassification case and noting that awards in excess of benchmark "are not uncommon"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D.

1   Cal. 2013) (awarding 33.3% of fund as attorneys' fees and listing cases); *Vasquez v. Coast Valley*

2   *Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("[The] exact percentage [awarded] varies

3   depending on the facts of the case, and in most common fund cases, the award exceeds that

4   benchmark."); Conte & Newberg, Newberg on Class Actions § 14:6, p. 551 (4th Ed. 2002) ("fee

5   awards in class actions average around one third of recovery"). Again, though, while an award in

6   excess of the benchmark would be justified in this case, Class Counsel are simply seeking a

7   benchmark fee of 25% of the value of the Settlement.

8         **C.**    **Class Counsel's Lodestar Supports the Fee Request.**

9         Courts may "cross-check" the percentage of the common fund against the lodestar to

10   ensure reasonableness of the fee award. *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th

11   Cir. 2009) (approving the district court's "informal lodestar cross-check" for confirming the

12   reasonableness of the percentage award); *Vizcaino*, 290 F.3d at 1050 (similar). The goal of both

13   the lodestar and percentage-of-the-fund methods is the determination of a reasonable fee that is

14   consistent with market rates. *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,

15   109 F.3d 602, 607 (9th Cir. 1997) ("Reasonableness is the goal, and mechanical or formulaic

16   application of either method, where it yields an unreasonable result, can be an abuse of

17   discretion."). A "lodestar" calculation multiplies the number of hours reasonably expended on the

18   litigation by counsel's reasonable hourly rates, depending on the region and the experience of the

19   lawyer. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 941.

20         When comparing a common fund award with counsel's lodestar (*see, e.g., Cunningham v.*

21   *Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988)), a court may adjust the fees "upward or

22   downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness'

23   factors, 'including the quality of representation, the benefit obtained for the class, the complexity

24   and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth Headset*

25   *Products Liability Litigation*, 654 F.3d at 941–42 (quoting *Hanlon*, 150 F.3d at 1029); *Fischel v.*

26   *Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (district court should

27   "apply a risk multiplier … when (1) attorneys take a case with the expectation that they will

28   receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3)

- 13 -

there is evidence that the case was risky"); *see also Vizcaino*, 290 F.3d at 1051 & n.6 (affirming

lodestar multiplier of 3.65 in light of complexity and risk of case and surveying 34 class common

fund settlements to find that 83% of multipliers were in the 1x- to 4x-range).

The requested fee award is supported by a lodestar cross-check. As the Ninth Circuit

explained in *Vizcaino*:

> Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.

*Vizcaino*, 290 F.3d at 1050. Needless to say, this case does not involve an "early" and easy

settlement. The litigation here was protracted and hard fought, and the lodestar reflects it.

Class Counsel's total lodestar through March 1 is $1,695,675.5 (a total of 3,096.9 billable

hours).  Rukin Decl., ¶¶ 18-19; Tomasevic Decl., ¶ 30.  This is approximately 43% of the requested

fee award of $3,950,962.50 – a "multiplier" of 2.3.  *Id.*  Significantly, the lodestar calculation does

not include: (1) time spent preparing this motion for attorneys' fees, costs, and service awards; (2)

time that will be spent preparing Plaintiff's Motion for Final Approval; or (2) time that Class Counsel

will spend on settlement matters in connection with or following the hearing on Final Approval,

including responding to class member questions, communications with the settlement administrator

and opposing counsel, and close-out/compliance matters. Rukin Decl., ¶ 21. At the final approval

hearing, Class Counsel will confirm for the Court their updated lodestar information. *Id.*

Under the lodestar method, courts should apply rates commensurate with hourly rates for

lawyers of "reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin.,

Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The "relevant community" for the purposes of determining

the reasonable hourly rate is the district in which the lawsuit proceeds. *Barjon v. Dalton*, 132 F.3d

496, 500 (9th Cir. 1997). Rate determinations from other cases are satisfactory evidence of the

prevailing market rate. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th

Cir. 1990).

Here, the attorneys that contributed work to this case are experienced in complex class

1   action litigation and regularly litigate cases in California federal and state courts. Rukin Decl., ¶¶

2   2-5; Tomasevic Decl., ¶¶ 2-13, 33-35. The partners managing the litigation have an extensive

3   history of successfully litigating complex class action cases. Rukin Decl., ¶¶ 2-5; Tomasevic Decl.,

4   ¶¶ 2-13, 33-35. Class Counsel's hourly rates are reasonable, comparable to those of other class

5   action attorneys with similar experience and years of practice, well within the range of those found

6   to be permissible for attorneys practicing class action litigation in the Northern District/San

7   Francisco area market, and have been approved by courts in recent cases. Rukin Decl., ¶¶ 28-31;

8   Tomasevic Decl., ¶¶ 36-37. In addition, Class Counsel has submitted the declarations of Todd

9   Jackson, Aaron Kaufmann, and David Lowe, three experienced California wage and hour class

10   action attorneys, who attest to the reasonableness of Class Counsel's rates. *See* Declaration of

11   Todd Jackson; Declaration of Aaron Kaufmann; Declaration of David Lowe.

12          Further, the hours recorded by Class Counsel are reasonable. Class Counsel has spent

13   approximately 3,100 hours litigating this case through March 1. Rukin Decl., ¶¶ 18-20; Tomasevic

14   Decl., ¶¶ 30-31. The summaries set forth in the Rukin and Tomasevic declarations describe the

15   work performed by Class Counsel, which includes fact investigation; drafting the complaint,

16   propounding and responding to written discovery; defending named and opt-in Plaintiffs'

17   depositions; taking the deposition of Matco's 30(b)(6) witness; engaging in motion practice—

18   including opposing a motion to dismiss and handling Matco's related appeals, opposing Matco's

19   motion to apply Ohio law, moving for class certification, and opposing Matco's motion for

20   judgment on the pleadings; attending two full-day mediations; negotiating the Settlement; working

21   with the Claims Administrator; and other tasks necessary to this litigation. Rukin Decl., ¶¶ 7-13;

22   Tomasevic Decl., ¶¶ 16, 30-31. Class Counsel did not include in their lodestar calculations time

23   spent preparing this motion, and also expect to spend additional time preparing the final approval

24   motion, preparing for and attending the final approval hearing, responding to inquiries from class

25   members, and dealing with claims administration issues, both pre- and post-final approval. Those

26   additional hours are not included in the lodestar calculations.

27          In addition, the lodestar cross-check multiplier of 2.3 does not warrant deviation from the 25

28   percent benchmark given the extraordinary results Plaintiff has obtained for the Class. As described

- 15 -

1  above, the Ninth Circuit has recognized that multipliers typically range up to 4, and this Court and

2  others in this Circuit "commonly apply multipliers in that range in California wage and hour class

3  actions," and often apply multipliers that far exceed that range. *Kang v. Wells Fargo Bank, N.A.*,

4  No. 17-CV-06220-BLF, 2021 WL 5826230, at *17–18 (N.D. Cal. Dec. 8, 2021) (ordering multiplier

5  of 5.5 in wage and hour class action); *see, e.g. Uschold v. NSMG Shared Servs., LLC*, No. 18-CV-

6  01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (awarding multiplier of 4 in wage

7  and hour class action); *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at

8  *8 (N.D. Cal. July 11, 2013) (finding lodestar multiplier of 3.36 in wage and hour action was

9  reasonable and did not warrant a downward departure from 25% benchmark); *Rippee v. Bos. Mkt.*

10  *Corp.*, No. 05CV1359 BTM(JMA), 2006 WL 8455400, at *4 (S.D. Cal. Oct. 10, 2006) (awarding

11  3.23 multiplier in wage and hour class action); *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-

12  EMC, 2019 WL 1170487, at *7 (N.D. Cal. Mar. 13, 2019) (awarding 27.2% of the common fund in

13  attorneys' fees in employee reimbursement class action, equal to a 3.5 multiplier); *Hopkins v. Stryker*

14  *Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (awarding

15  30% of the common fund in attorneys' fees in wage and hour class action, equal to a 2.76 multiplier);

16  *Lourdes Lefevre v. Five Star Quality Care, Inc*., Case No. 5:15-cv-01305-VAP-SPx, 2021 WL

17  2389884, at *5 (C.D. Cal. Jan. 7, 2021) (awarding 33% of the common fund in attorney's fees in

18  wage and hour class action, equal to a 2.5 multiplier); *see also Steiner v. Am. Broad. Co.*, 248 F.

19  App'x 780, 783 (9th Cir. 2007) (finding a 6.85 multiplier "falls well within the range of multipliers

20  that courts have allowed."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008)

21  ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts . . ."). Indeed,

22  courts in this Circuit have treated employee misclassification class actions as involving greater

23  difficulty than typical wage and hour class actions, justifying higher multipliers. *See, e.g. Buccellato*

24  *v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011)

25  (awarding multiplier of 4.3 in employee misclassification class action based on comparison to

26  derivative, ERISA, and securities actions awarding multipliers greater than 4).

27        Moreover, courts in this Circuit have recognized that the multiplier evident at the time of

28  the fees motion is not the true final multiplier, as it will be lowered by additional time spent by

1    counsel on administration of the settlement. *See, e.g., Contreras v. Armstrong Flooring, Inc.*, Case

2    No. CV 20-3087 PSG (SKx), 2021 WL 4352299, at *12 (C.D. Cal. July 6, 2021) (finding that

3    "additional time on further administration of the settlement [] will result in a final multiplier that is

4    lower"); *Freeze v. PVH Corp.*, No. CV 19-1694 PSG (EX), 2021 WL 2953161, at *10 (C.D. Cal.

5    Jan. 7, 2021) (same). As explained above, the lodestar in this motion does not include time spent

6    preparing the present motion, preparing the motion for final approval, future communications with

7    Class Members and the settlement administrator, and otherwise ensuring administration of the

8    Settlement.  Rukin Decl., ¶ 21. Class Counsel expect to expend substantial time on these tasks,

9    which will lower the already-reasonable 2.3 multiplier.

10        The requested fee award should be granted.

11   **V.    THE COURT SHOULD AWARD THE REQUESTED COSTS**

12        Courts may reimburse plaintiff's counsel for the costs incurred in prosecuting cases on a

13   contingent fee basis. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 941

14   ("Attorneys' fees and costs may be awarded in a certified class action where so authorized by law or

15   the parties' agreement"). To that end, "courts throughout the Ninth Circuit regularly award litigation

16   costs and expenses— including photocopying, printing, postage, court costs, research on online

17   databases, experts and consultants, and reasonable travel expenses" to Class Counsel. *Chen v. Chase*

18   *Bank USA, N.A.*, 2020 WL 3432644, at *11 (N.D. Cal. June 23, 2020), citing *Harris v. Marhoefer*,

19   24 F.3d 16, 19 (9th Cir. 1994) (noting that a prevailing plaintiff may be entitled to costs including,

20   among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger

21   services).

22        Here, Plaintiff's current costs are $51,842.56.  See Rukin Decl., ¶¶ 33-34; Tomasevic

23   Decl., ¶¶ 38-39. The costs incurred—including filing fees, expert costs, deposition expenses,

24   mediation fees, legal research charges, and ESI storage costs—were necessary and reasonable. *Id.*

25   They are also reasonable in light of the recovery in this case—amounting to less than .34% percent

26   of the Settlement value. *See, e.g., Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149

27   MMM SHX, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (approving litigation costs of

28   $148,402 in wage & hour settlement valued at $8.5 million, or nearly 2% of the common fund).

1    **VI.    THE REQUESTED SERVICE AWARDS ARE WARRANTED**

2          Service awards "are intended to compensate class representatives for work done on behalf

3    of the class, to make up for financial and reputational risk undertaken in bringing the action and [ ]

4    to recognize their willingness to act as a private attorney general;" such awards are "fairly typical

5    in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

6    Service awards also compensate plaintiffs for the risk of stigma and retaliation to which they have

7    submitted and a loss of income. *Graham v. Overland Sols., Inc.*, No. 10-CV-0672 BEN BLM, 2012

8    WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (quoting *Staton*, 327 F.3d at 977) (approving service

9    awards of $25,000 each to the named plaintiffs for their time and effort, the risks they undertook,

10   and the stigma upon future opportunities, and a general release of all claims). "Numerous courts in

11   the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where . . . the

12   class representative has demonstrated a strong commitment to the class." *Garner v. State Farm*

13   *Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22,

14   2010) (collecting cases).  Plaintiff here seeks the following service awards:

15          Plaintiff John Fleming: Plaintiff requests a $25,000 service award. Plaintiff searched for

16   and produced over 7,000 pages of documents in response to Matco's discovery requests, sat for his

17   deposition, attended two mediations, and was actively engaged with counsel throughout this case.

18   Fleming Decl., ¶¶ 10-20.

19          Simon Goro and Emanuel Aguilera:  Plaintiff requests $15,000 service awards for Simon

20   Goro and Emanuel Aguilera.  As described above, Goro and Aguilera dismissed their

21   misclassification lawsuit given the existence of this case, at which time they were subjected to

22   lengthy legal proceedings by Matco regarding issues that had already been determined by this

23   Court.  Tomasevic Decl., ¶¶ 18-20. Goro and Aguilera also provided documents and information

24   and sat for deposition in the *Fleming* matter.  Goro Decl. ¶¶ 11-12; Aguilera Decl. ¶¶ 11-12. Their

25   assistance was valuable to Class Counsel in the prosecution of this case. Tomasevic Decl., ¶¶18-20.

26          The service awards sought here are well within the range of awards approved by this Court

27   and other federal judges in class actions. *Rabin v. PricewaterhouseCoopers LLP*, Case No. 16-cv-

28   02276-JST, 2021 WL 837626, at *10 (N.D. Cal. Feb. 4, 2021) (approving $20,000 service award to

- 18 -

each named plaintiff); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17–*18 (N.D. Cal. Sept. 2, 2015) (granting service awards ranging from $80,000- $120,000 after previously being granted $20,000 each in service awards and noting awards are 14 to 21 greater than average class member recovery); *Walton v. AT&T Servs., Inc.*, No. 15-cv-03653, ECF No. 209 at 12 (N.D. Cal. Feb. 2, 2018) ($20,000 to two class representatives and $5,000 to seven testifying witnesses who participated in depositions); *Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3929129, at *1–2 (N.D. Cal. July 18, 2013) ($35,000 and $25,000 to named plaintiffs); *Sayaman v. Baxter Healthcare Corp.*, No. CV 10-1049-VBF(JEMX), 2011 WL 13213580, at *4 (C.D. Cal. Mar. 21, 2011) (awarding $25,000 service payments to named plaintiffs; "the payment of service awards to successful class representatives is appropriate and the amount of $25,000 is within the currently accepted range"); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (awarding $25,000 service awards in FLSA overtime wages class action).

The requested service awards are also modest in light of both the total value of the Settlement and the amounts Class Members will be receiving under the Settlement. The total amount of service awards requested constitutes only .3% of the Settlement, and the requested service awards of $15,0000 and $25,000 are far *less* than the average Class Member recovery in this matter ($35,000 in cash and $42,000 in cash and debt relief). Courts in the Ninth Circuit have approved enhancements many multiples greater than what is being asked here. *See, e.g., Torres v. Pick-A-Part Auto Wrecking*, No. 116-CV-01915 DAD (BAM), 2018 WL 306287, at *5 (E.D. Cal. Jan. 5, 2018) (approving enhancement that is "16 times the maximum amount that a class member could expect to receive in this litigation."); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 905 (C.D. Cal. 2016), judgment entered, No. SACV 111733 FMO (MLGx), 2016 WL 5921765 (C.D. Cal. Oct. 11, 2016) (granting final approval and awarding enhancement approximately 20 to 13.33 times greater than average class member monetary recovery of $200-$300); *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV 122016 FMO (ANx), 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) (granting final approval and awarding enhancement 7.7 times greater than average class member recovery of $259); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit*

*Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (final approval granted and awarding enhancements 166 to 1,000 times greater than value of $5, $15, and $30 vouchers); *Bautista v. Harvest Mgmt. Sub LLC*, No. CV 1210004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013) (granting preliminary approval and preliminarily finding requested award reasonable between estimated 9.2 and 18.5 times greater than recovery of majority of class estimated to be between $270 and $539).

Moreover, Fleming, Goro, and Aguilera were all essential to the prosecution of this matter. They gave up individual control of their claims to facilitate class-wide resolution—and as a direct result of their efforts, the Class is benefiting greatly. *See* Section III, *supra.* As detailed in the accompanying declarations, each individual also contributed between 56 and 136 hours to see this case through over the last three years. Fleming Decl., ¶ 21; Goro Decl., ¶ 15; Aguilera Decl., ¶ 15. And in the face of their efforts, the risks these individuals faced were not merely potential but actual. Goro and Aguilera were sued in arbitration and in federal court in Matco's home state of Ohio, such that they faced an actual risk of financial loss. Goro Decl., ¶ 7; Aguilera Decl., ¶ 7. Fleming, for his part, was concerned about the same outcome given Matco's actions towards Goro and Aguilera, as well as effects on his ability to work within the small tool distributorship industry—and he believes he suffered actual financial loss as a result of his participation in the lawsuit.  Fleming Decl., ¶¶ 7-9.  Accordingly, the Court should grant the requested service awards.

**VII.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) Approve Class Counsel's request for an award of attorneys' fees in the amount of $3,950,962.50; (2) approve Class Counsel's request for reimbursement of litigation costs in an amount up to $51,842.56; and (3) approve service awards totaling $55,000 ($25,000 for Fleming, $15,000 for Aguilera, and $15,000 for Goro).

Dated: March 14, 2022                    **RUKIN HYLAND & RIGGIN LLP**

By:   */s/ Peter Rukin*
      Peter Rukin
      Jessica Riggin
      Valerie Brender

1

2
                                **NICHOLAS & TOMASEVIC, LLP**

3
By:      /s/ Shaun Markley
                       Craig M. Nicholas

4
                       Alex Tomasevic
                       Shaun Markley

5
                       Attorneys for Plaintiff,

6
                       JOHN FLEMING

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS