**RUKIN HYLAND & RIGGIN LLP**
Peter Rukin (SBN 178336)
Jessica Riggin (SBN 281712)
Valerie Brender (SBN 298224)
1939 Harrison Street, Suite 290
Oakland, CA 94612
Tel: (415) 421-1800
Fax: (415) 421-1700
Email: prukin@rukinhyland.com
Email: jriggin@rukinhyland.com
Email: vbrender@rukinhyland.com

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiff,
JOHN FLEMING

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FLEMING, on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>  vs.<br><br>MATCO TOOLS CORPORATION, a Delaware corporation; NMTC, INC. d/b/a MATCO TOOLS, a Delaware corporation, FORTIVE CORPORATION, a Delaware corporation; and DOES 1-20, inclusive,<br><br>   Defendants. | Case No.: 3:19-cv-00463-WHO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date**: April 27, 2022<br>**Time**: 2:00 p.m.<br>**Courtroom**: 2, 17th Floor<br><br>**Judge**: Hon. William H. Orrick<br><br>**Action Filed**: January 25, 2019 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 27, 2022, at 2:00 pm or as soon thereafter as the matter may be heard in the courtroom of the Honorable William Orrick in Courtroom 2, 17th Floor, 450 Golden Gate Ave, San Francisco, California, Plaintiff John Fleming will and hereby will does make this motion for an order from this Court granting final approval of this proposed class action and PAGA representative Settlement.

Through this motion, Plaintiff seeks an order from the Court: (1) granting final approval of the proposed Settlement; (2) finding that adequate notice was provided to the Settlement Class; (3) approving a payment of $10,000 to ILYM Group, Inc. for settlement administration costs; (4) approving a payment of $187,500 to the California Labor and Workforce Development Agency (LWDA); and (5) dismissing this lawsuit with prejudice while retaining jurisdiction over the case and the Parties to the extent necessary to implement the terms of the Settlement Agreement until each act agreed to be performed by the Parties under the Settlement has been performed.

This motion is based on this Notice of Motion and Motion, Declaration of Madely Nava of ILYM Group, Inc. ("ILYM Decl.), the Declaration of Peter Rukin, the Declaration of Alex Tomasevic, all other pleadings and papers on file in this action, and such argument as the Court may hear.


Dated: March 28, 2022                    **RUKIN HYLAND & RIGGIN LLP**

                              By:    _/s/  Peter Rukin_
                                     Peter Rukin (SBN 178336)
                                     Jessica Riggin (SBN 281712)
                                     Valerie Brender (SBN 298224)
                                     1939 Harrison Street, Suite 290
                                     Oakland, CA 94612
                                     Tel: (415) 421-1800
                                     Fax: (415) 421-1700
                                     Email: prukin@rukinhyland.com
                                     Email: jriggin@rukinhyland.com
                                     Email: vbrender@rukinhyland.com

                                     Attorneys for Plaintiff,
                                     JOHN FLEMING

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NICHOLAS & TOMASEVIC, LLP**

By: */s/ Shaun Markley*
   Craig M. Nicholas (SBN 178444)
   Alex Tomasevic (SBN 245598)
   Shaun Markley (SBN 291785)
   225 Broadway, 19th Floor
   San Diego, California 92101
   Tel: (619) 325-0492
   Fax: (619) 325-0496
   Email: cnicholas@nicholaslaw.org
   Email: atomasevic@nicholaslaw.org
   Email: smarkley@nicholaslaw.org

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................1

III. NOTICE PROCESS AND CLASS MEMBER RESPONSE...................................................2

IV. OVERVIEW OF THE PROPOSED SETTLEMENT........................................................3

    A.  The Settlement Class ....................................................................................3

    B.  Relief To The Settlement Class ....................................................................4

        1.  Monetary And Debt Relief ................................................................4

        2.  Amended Distributorship Agreements .............................................6

    C.  Service Awards, Attorneys' Fees, And Costs ...............................................8

    D.  Release Of Claims .......................................................................................8

V.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT .............9

    A.  The Criteria For Final Settlement Approval Are Satisfied..........................9

        1.  The Settlement Is Fair Given The Strength Of Plaintiff's Case And The Risk, Expense, Complexity, And Likely Duration Of Further Litigation ..........................................................................................10

        2.  The Settlement Reflects The Informed Views Of Experienced Counsel And Is The Product Of Serious, Arm's-Length Negotiations Conducted After Extensive Discovery And Investigation ...........................11

        3.  The Lack Of Opposition By The Class Supports Approval Of The Settlement ........................................................................................12

    B.  The Notice Provided To Class Members Was Reasonable .......................13

    C.  The Requested LWDA Payment Is Reasonable .........................................13

    D.  The Requested Administration Costs Are Reasonable...............................14

VI. CONCLUSION ........................................................................................................14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

## **TABLE OF AUTHORITIES**

Page(s)

3

**Federal Cases**

4

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................... 12

5

6

*Chu v. Wells Fargo Invs., LLC*,
   No. C-05-4526-MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ........................................... 14

7

8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................................... 12

9

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................... 9

10

11

*Fleming v. Matco Tools Corporation*,
   384 F.Supp.3d 1124 (N.D. Cal. May 3, 2019) ............................................................. 11

12

13

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ........................................................................... 9

14

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................... 10

15

16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 11

17

18

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................... 11

19

*Klee v. Nissan N. Am., Inc., No.*,
   CV1208238AWTPJWX, 2015 WL 4538426 (C.D. Cal. July 7, 2015) ...................................... 12

20

21

*McKenzie v. Fed. Exp. Corp.*,
   No. CV 10-02420 GAF PLAX, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ........................... 14

22

23

*Millan v. Cascade Water Servs., Inc.*,
   No. 112CV01821AWIEPG, 2016 WL 3077710 (E.D. Cal. May 31, 2016) ............................. 14

24

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 10, 11, 12

25

26

*O'Connor v. Uber Techs., Inc.*,
   201 F. Supp. 3d 1110 (N.D. Cal. 2016) ............................................................ 13, 14

27

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................... 9

28

- iv -

*Pederson v. Airport Terminal Servs.*,
  2018 WL 2138457 (C.D. Cal. April 5, 2018) ............................................................ 11

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................... 11

*Schiller v. David's Bridal, Inc.*,
  *1:10-cv-00616-AWI-SKO*, 2012 WL 2117001 (E.D. Cal. Jun. 11, 2012) ........................... 12, 14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................................. 9

**Federal Rules**

Fed. R. Civ. P. 23 ......................................................................................... 13
Fed. R. Civ. P. 23(c)(2)(B) ................................................................................ 12
Fed. R. Civ. P. 23(e)(1) .................................................................................. 12
Fed. R. Civ. P. 23(e)(2) .................................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On January 20, 2022, the Court entered an Order granting preliminary approval of the class and PAGA representative Settlement reached in this action against Matco Tools Corporation, NMTC, Inc. d/b/a Matco Tools and Fortive Corporation ("Matco" or "Defendant"). Dkt. 104 ("Preliminary Approval Order").  Since that time, notice of the Settlement has been distributed to the Class, and Class Members' reaction to the settlement has been overwhelmingly positive.  The Notice was disseminated to 294 Class Members, and thus far, none have requested exclusion from the Settlement or objected.[1]  To the contrary, Class Counsel have received positive feedback about the Settlement. Further, as discussed below, the proposed Settlement satisfies all criteria for final settlement approval.  The Settlement is fair and reasonable and provides substantial relief to Class Members in light of the strengths and weaknesses of the case, the risks of further litigation, and the beliefs and experience of Class Counsel.  In addition, the proposed payments to the Settlement Administrator and the Labor and Workforce Development Agency (LWDA) are reasonable. Accordingly, Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement.

### II.   RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As has been extensively previously briefed in this case, Plaintiff alleges that he and his fellow Distributors were misclassified as "independent contractors," and as a result are owed monies under California employment law. In Plaintiff's earlier-filed Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. 105, at 2-4) ("Motion for Attorneys' Fees") and the related declarations of counsel (Dkts. 105-2, 105-6), Plaintiff outlined the factual background and procedural history of this matter. Pursuant to this Court's Procedural Guidance for Class Action Settlements,[2] Plaintiff refers the Court to the background and procedural history from his Motion for Attorneys' Fees and will

---

[1] The deadline to opt out of the arbitration provision of the amended Distributorship Agreement passed on March 24, 2022 with no opt-outs. The deadline to object or opt-out of the Settlement is April 8, 2022.  Class Counsel will submit a supplemental statement to the Court after the close of the consideration period advising the Court as to the final Class Member response to the Settlement.  Rukin Decl. ¶ 18.
[2] Available at: https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, see Final Approval, subsection (2).

not repeat the same background facts here, except for the relevant post-Preliminary Approval history detailed below.

### III.    NOTICE PROCESS AND CLASS MEMBER RESPONSE

Pursuant to the Court's preliminary approval order, ILYM Group, Inc. ("ILYM") is the Settlement Administrator for this case.  In accordance with the terms of the Settlement, on February 4, 2022, Matco provided ILYM with an Excel spreadsheet containing the names of 294 individuals identified as Class Members.  Declaration of Madely Nava of ILYM Group, Inc. "(ILYM Decl."), ¶ 5.  The list included the name, social security number, last known mailing address, email address, and the total number of applicable workweeks worked for each Settlement Class Member.  *Id*.

To obtain the most current mailing address for each Class Member, ILYM processed the Class List addresses through the National Change of Address ("NCOA") database maintained by the U.S. Postal Service ("USPS"). ILYM Decl., ¶ 6.  On February 22, 2022, ILYM mailed the Court-approved Notice Packet via USPS first-class mail to all 294 Class Members and emailed the Notice Packet to all 294 Class Members, with an objection and exclusion deadline of April 8, 2022, and (for Class Members who are current Matco Tools distributors) a deadline to opt out of the arbitration provision of the Amended Distributorship Agreement of March 24, 2022.  ILYM Decl., ¶¶ 8, 11-13.  A copy of the Notice that was sent to Class Members who are current Charter Distributors is attached to the ILYM Declaration as Exhibit A, and a copy of the Notice that was sent to Class Members who are current, non-Charter Distributers is attached to the ILYM Declaration as Exhibit B.  On February 22, 2022, ILYM also established a settlement website (www.ilymgroup.com/matcolawsuit), which contained the relevant settlement documents, including the Notice and Settlement Agreement.  ILYM Decl., ¶ 7.

As of March 25, 2022, of the 294 Notices mailed, 7 were returned as undeliverable. Of the 7 returned Notice Packets, none were returned with a forwarding address.  ILYM Group performed a computerized skip trace on the 7 returned Notice Packets in an effort to obtain an updated address for purpose of re-mailing the Notice Packet.  As a result of this skip trace, 4 updated addresses were obtained and the Notice Packet was promptly re-mailed to those Class Members, via U.S First

Class Mail.  Accordingly, as of March 25, 2022, a total of 3 Notice Packets have been deemed undeliverable, as no updated address was found notwithstanding ILYM's skip tracing.  ILYM Decl., ¶¶ 8-10.  Four of the emails sent by ILYM were invalid; however, none of those email addresses belonged to the Class Members who had undeliverable mailing addresses.  Accordingly, all Class Members have received the Notice Packet through mail, email, or both.  *Id.* at ¶ 10.

As of March 25, 2022, ILYM has received no requests for exclusion from the Settlement from Class Members.  ILYM Decl., ¶ 12.  ILYM did not receive any requests to opt out of the arbitration provision of the Amended Distributorship Agreement by the deadline.  *Id.* at  ¶ 11.  ILYM has not received any objections to the settlement from Class Members. *Id.* at  ¶ 13.  Nor have any objections been filed with the Court.

According to ILYM's calculations, Participating Settlement Class Members will receive an estimated average gross payment of $31,444.54, with the estimated highest gross payment being $60,364.52.  ILYM Decl., ¶ 16.  These calculations do not include the additional Debt Forgiveness benefits conferred by the Settlement.

ILYM's estimated Settlement Administration cost is $10,000.00, which covers all services completed to date and the estimated cost of remaining Settlement administration activities, including calculating Class Member payments and distribution of payments. ILYM Decl., ¶ 17.

## IV.    OVERVIEW OF THE PROPOSED SETTLEMENT

The complete details of the Settlement are contained in the Settlement Agreement attached as Exhibit 1 to the Declaration of Peter Rukin submitted with Plaintiffs' Motion for Preliminary Approval. Dkt. 97-1. Plaintiff also summarized these terms in the Preliminary Approval Motion granted by the Court. Dkt. 97 at 4-9. The following summarizes the Settlement Agreement's key terms:

### A.    The Settlement Class

Settlement Class Members are defined as all persons who signed Matco Tools franchise Distributorship Agreements in the State of California and personally operated a mobile store at any time between January 25, 2015 through and including the date the Court grants preliminary approval of the Settlement (the "Class Period").  Dkt. 97-1 at 1.13.

As described in the Parties' Preliminary Approval Motion and as approved by the Court in the Preliminary Approval Order, the Settlement Class is the same as the Class that was certified by the Court in its Order Granting in Part Motion to Certify Class ("Certification Order"; Dkt. 71); however, the claims certified for settlement purposes are beyond those certified by the Court in the context of the Certification Order.  In the Certification Order, the Court granted certification as to the threshold question of misclassification and Plaintiff's substantive claims for expense reimbursement, wage statement, and UCL (as to the wage statement claim) but denied it as to Plaintiff's claims for overtime, meal and rest breaks, waiting time penalties, and wage deductions. *See generally* Certification Order, Dkt. 71.  As a condition of the Settlement, the parties stipulated to the propriety of class certification of the previously uncertified wage and hour claims in addition to those that could have been brought based on the same facts alleged in the operative complaint like Fair Labor Standards Act overtime claims.  Dkt. 97-1 at 1.41.

As explained in the parties' Preliminary Approval Motion, this is appropriate for a number of reasons. First, including the previously uncertified claims in the scope of the Settlement and release makes sense because the claims arise out of the same common core of facts as the certified claims, rendering reasonable the parties' expectation of a global settlement. Second, Class Counsel has no indication that any Class Members are interested in pursuing the non-certified claims. Dkt. 97-1, ¶ 17.  As such, a resolution of all of their claims in the Settlement is in their best interest. Nonetheless, in the event any Class Member does desire to pursue the non-certified claims, the parties have preserved their right to opt-out of the Settlement—and to date, no Class Member has exercised that right.  Dkt. 97-1 at 4.1.1.  Third, the consideration and relief negotiated is fair, adequate and reasonable with respect to all released claims.  In this regard, it is worth noting that this Court expressed in its class certification order that "Matco has a strong argument that the outside sales exemption applies to at least some of the franchisees" as "[t]here is no dispute that franchisees spend the bulk of their time traveling to and visiting with customers in their Matco trucks [e.g. that they likely meet the outside sales definition]."  Certification Order, Dkt. 71 at 19.

**B.**     **Relief to the Settlement Class**

   ***1.***     ***Monetary and Debt Relief***

- 4 -

The Gross Settlement Value of the Settlement includes both a Monetary Relief component and Debt Forgiveness by Matco, as detailed below, totaling $15,803,850.  Dkt. 97-1 at, 1.9, 1.19, 1.27.  The Gross Settlement Value includes all Individual Settlement Payments to Settlement Class Members and Aggrieved Individuals, Administrative Costs, Class Counsel's attorneys' fees and litigation costs, any Service Awards, Debt Forgiveness, and the PAGA Payment.

The Settlement provides that Matco will pay $13,500,000.00 in "cash" in connection with the Settlement.  Dkt. 97-1 at 1.9.  Payment for Court-approved attorneys' fees and costs, Court-approved Service Awards, Court-approved Settlement Administration fees and costs, and a payment to the LWDA will be deducted from this amount.  *Id.* at p. 1.31.  The resulting "Net Settlement Amount" will be distributed to Class Members who participate in the Settlement.  *Id.* at 1.31.

Additionally, there will be a "Debt Forgiveness" portion of the Settlement, in which Matco, in connection with the Settlement, will forgive the debt owed by Class Members who terminated their Matco Tools distributorships on or before September 8, 2021.  The amount of the Debt Forgiveness as of September 8, 2021 is approximately $2,303,850.  Rukin Decl., ¶ 13.

The Settlement also resolves Plaintiff's PAGA claim filed on behalf of the State of California. In settlement of that claim, and in exchange for a release, the California Labor and Workforce Development Agency ("LWDA") shall receive payment of $187,000 for its 75% share of civil penalties and aggrieved Class Members within the PAGA limitations period shall receive a pro rata share of $62,500, for a total PAGA settlement share of $250,000.  Dkt. 97-1 at 1.35. A copy of the Settlement Agreement and this motion have been served on the LWDA.  Dkt. 97-1, ¶ 27.

Each Participating Class Member will receive a portion of the Net Settlement Amount as follows:

(a)      For Settlement Class Members, the Individual Settlement Payment is calculated by dividing the number of eligible workweeks worked during the Class Period by all eligible workweeks during the Class Period attributed to members of the Settlement Class, multiplied by the portion of the Net Settlement Amount that is not attributable to the PAGA Payment.  If the Settlement Class Member is an Aggrieved Individual entitled to a PAGA recovery, then the

- 5 -

Settlement Class Member shall also receive a share of the PAGA Payment based on the number of eligible workweeks worked during the PAGA Period. Dkt. 97-1 at 5.4.

(b) The Individual Settlement Payment of a Settlement Class Member who is a former Matco Tools distributor accounts for Debt Forgiveness, provided the Settlement Class Member had terminated their distributorship by, and was indebted to Matco as of, September 8, 2021.  For any Settlement Class Member who receives Debt Forgiveness, the portion of his or her Individual Settlement Payment not attributable to the PAGA Payment is reduced as follows: (i) Settlement Class Members with debts of up to $10,000.00 as of September 8, 2021 - 10%; (ii) Settlement Class Members with debts of between $10,000.01 and $25,000.00 as of September 8, 2021 -  25%; (iii) Settlement Class Members with debts of $25,000.01 or more as of September 8, 2021 - 50%. Dkt. 97-1 at 5.51.

(c) Any sums by which Settlement Class Members' Individual Settlement Payments were reduced on account of Debt Forgiveness are redistributed to those Settlement Class Members who did not benefit from any Debt Forgiveness. Dkt. 97-1 at 5.51.

(d) If a Settlement Class Member opts out of the Settlement but is an Aggrieved Individual, that Individual Settlement Payment consists solely of a share of the PAGA Payment. Dkt. 97-1 at 5.51(c).

(e) Any Settlement Class Member who is a current California Matco Tools Distributor and who does not submit a timely and valid Arbitration Amendment Opt Out (effectively opting the Settlement Class Member out of the arbitration provision in the Amended Distributorship Agreement) also receives an Arbitration Amendment Allocation of $5,000.00. Dkt. 97-1 at 5.51(d). No Settlement Class Members submitted Arbitration Amendment Opt Outs.  ILYM Decl., ¶ 11.

## 2.   *Amended Distributorship Agreements*

As described in the Preliminary Approval Motion, Class Members who are current non-Charter California Matco Tools Distributors, and who do not submit a valid Request for Exclusion, shall be deemed to have amended their Matco Tools Distributorship Agreement to incorporate the Amended Terms and the Court's Final Approval Order shall order that their Matco Tools

Distributorship Agreements incorporate the Amended Terms. Dkt. 97-1 at 6.1.[3]

The Amended Terms provide Current California Distributors with certain new rights with respect to their territories, and in many instances, decreases Matco's control over Current California Distributors through the addition or subtraction of numerous contractual provisions, including but not limited to:

- Adding procedures though which a Distributor can ask Matco to modify the Distributor's customer list (i.e. "List of Calls") and Matco's promise to not "unreasonably withhold consent to modify the List of Calls." (§ 1.2);

- Adding procedures through which a Distributor can request to sell non-competing products through their distributorship and Matco's promise not to unreasonably withhold permission to sell such products. (§ 3.2);

- Adding that "pricing of products" is the Distributor's sole prerogative and that should Matco wish to implement discount, incentive, or coupon programs for end customers, then Matco will compensate the Distributor accordingly for his or her participation in those programs. (§§3.12, 6.2);

- Adding a provision stating that Distributors "have the right to sell [their] Distributorship" and Matco's promise to not unreasonably withhold consent to sell the Distributorship. (§ 10.1).

The Amended Distributorship Agreement also amends Matco's dispute resolution procedures, including arbitration and forum selection clauses in prior versions of its Distributorship Agreements—some of which this Court previously deemed unenforceable (*see* Dkt. 35). The new dispute resolution procedures remedy the issue identified by this Court by eliminating the PAGA waiver (§ 12.5) and also change other provisions to make Matco's dispute resolution procedures fairer to Distributors. These changes include (1) changing the governing law of the Distributorship Agreement, including its arbitration provision, to that of California – these Distributors' home state

---

[3] Current California Charter Matco Tools Distributors who do not submit a valid Request for Exclusion shall be deemed to have amended their Matco Tools Distributorship Agreement to incorporate the Amended Charter Terms. The Amended Charter Terms contains the same revised dispute resolution provision as the Amended Terms.

- as opposed to Ohio law, as had previously been the case (§ 12.1); (2) changing the "Venue and Jurisdiction" clause to adopt California as the appropriate forum for disputes, as opposed to Matco's home state of Ohio; (3) eliminating the "limitation of actions" provision which previously gave Distributors as little as one year upon which to bring any accrued claim (§ 12.3); (4) limiting the application of the arbitration clause to only the Distributor him or herself and any spouse also executing the Distributor Agreement (as opposed to, as previously was the case, extending the arbitration clause to all "immediate family members" of the principal Distributor) (§ 12.1); (5) deleting the prior "Limitation of Damages" provision which had sought to preclude any award of punitive or consequential damages; and (6) adding that Matco shall pay for all costs unique to arbitration, whereas previously the Distributor was to share equally in any arbitration costs. Distributors had the right to opt out of the new dispute resolution provisions; however, none chose to do so.  All current Distributors accordingly receive an extra $5,000 payment. Dkt. 97-1 at 5.5.1(d).

### C.     Service Awards, Attorneys' Fees, and Costs

The following sums will be deducted from the Settlement Amount: (1) Service Award payments to the Named Plaintiff, Simon Goro, and Emanuel Aguilera; (2) the fees and expenses of the Claims Administrator; (3) Class Counsel's attorneys' fees; (4) Class Counsel's litigation costs; and (5) payment of $250,000 in settlement of the PAGA claims ($187,500 of which will go to the LWDA and $62,500 of which will be distributed among the aggrieved employees).  Dkt. 97-1 at 1.31, 1.35. With respect to attorneys' fees, Plaintiff has requested $3,950,962.50, an amount equal to 25% percent of the Gross Settlement Value. *See generally* Motion for Attorneys' Fees. With respect to service awards, Plaintiff seeks $25,000 for the Named Plaintiff and $15,000 each to Goro and Aguilera for their participation and assistance in the prosecution of this action and ancillary proceedings.  *Id.*

### D.     Release of Claims

Settlement Class Members who do not opt out of the Settlement will release all claims or causes of action alleged in the Complaint, as well as all claims arising from the California Labor Code, wage orders and applicable regulations that could have been raised based on the facts alleged

1   in the Complaint. Dkt. 97-1 at 7.1. Settlement Class Members who cash a settlement check will also

2   release their claims under the federal Fair Labor Standards Act. *Id.* As more fully detailed in

3   Plaintiff's Motion for Attorneys' Fees, Named Plaintiff, Simon Goro, and Emanuel Aguilera agree to

4   a general release of claims. *See also id.* at 7.2.

5   **V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

6   **A.   The Criteria for Final Settlement Approval Are Satisfied**

7   There is a "strong judicial policy that favors settlements, particularly where complex class

8   action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

9   1992). "Litigation settlements offer parties and their counsel relief from the burdens and

10   uncertainties inherent in trial. … The economies of litigation are such that pretrial settlement may be

11   more advantageous for both sides than expending the time and resources inevitably consumed in the

12   trial process." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).

13   "The initial decision to approve or reject a settlement proposal is committed to the sound

14   discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San*

15   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). In assessing a class action settlement, district courts

16   are required to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R.

17   Civ. P. 23(e)(2). To determine whether a settlement agreement meets these standards, a district

18   court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk,

19   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining the case as

20   a class action; (4) the amount of recovery; (5) the extent of discovery completed and the stage of

21   proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

22   participant; and (8) the reaction of class members. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th

23   Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend

24   upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the

25   unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at

26   625.

27   As detailed below, and consistent with the Court's Preliminary Approval Order, these factors

28   indicate that the settlement is fair, reasonable, and adequate, and the settlement should be approved.

1

### 1. The Settlement is Fair Given the Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

2

3

4

5

6

7

8

9

10

11

12

13

As described in significant detail in the class certification briefing (*see* Dkts. 58, 68, 71), Plaintiff's primary contention is that Matco classified its Distributors as independent contractors while reserving and exercising levels of control consistent with an employment rather than independent contractor relationship. Plaintiff further alleges that, as a result of this misclassification, Plaintiff and Settlement Class Members are owed compensation for various benefits of employment that Matco neglected to pay them. Although Plaintiff believes that the documents produced in discovery and information revealed during depositions support Plaintiff's allegations, a finder of fact could conclude that Distributors were properly classified as independent contractors. Separately, the Settlement Class faced risks proving their claims in a classwide trial with competent classwide evidence.  Moreover, even if Plaintiff was successful at the liability and damages phases of this case, there are risks of delays due to COVID-19 and likely appeals on central issues in this case under constantly evolving California law.

14

15

16

17

18

19

20

21

22

23

Rather than undertake these risks, Plaintiff secured strong relief for the Class. As detailed in the Preliminary Approval Motion, Settlement Class Members are recovering, before deduction for attorneys' fees and costs, an average of approximately 41 percent of their maximum potential damages on the certified claims. *See* Preliminary Approval Motion, Dkt. 97-1 at ¶¶ 14-15. According to ILYM's calculations, Participating Settlement Class Members will receive an estimated average gross payment of $31,444.54, with the estimated highest gross payment being $60,364.52. ILYM Decl., ¶ 16.  These calculations do not include the additional Debt Forgiveness benefits conferred by the Settlement. The amounts of such settlement payments are fair, adequate, and reasonable. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (one-sixth (16.67%) recovery adequate in light of risks).

24

25

26

27

28

It is also possible, however, that even if a jury found liability in a phase one trial, that the damages awarded could be substantially less than the maximum damages estimated above, as Matco has contended throughout the litigation. The Settlement also affords relief to Settlement Class Members who likely would never have filed individual claims. Given these circumstances, the settlement is fair, adequate, and reasonable. By settling at this stage for strong value, Plaintiff

maximized the speed of recovery while obtaining significant value per Settlement Class Member. This strongly supports finally approving this Settlement.

> ## 2. *The Settlement Reflects the Informed Views of Experienced Counsel and is the Product of Serious, Arm's-Length Negotiations Conducted After Extensive Discovery and Investigation*

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation omitted). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Id., quoting In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Moreover, a "settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *National Rural Telecommunications Cooperative*, 221 F.R.D. at 528 (citations omitted). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018), *quoting Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Here, the parties reached a settlement after arm's length negotiations that were conducted under the supervision of two very experienced mediators, Jeff Ross and Jeff Wohl. Rukin Decl., ¶ 12. The parties attended two full days of mediations and conducted follow up negotiations over the course of several months following the final mediation. *Id.* These discussions occurred after extensive discovery efforts, document productions, Plaintiff and Defendant depositions, numerous Class Member depositions, discovery to the putative class, and careful data analysis to comprehend potential damages. *Id.*

Further, the parties briefed numerous complex legal and factual issues in this case, including arbitration and forum selection (*Fleming v. Matco Tools Corporation*, 384 F.Supp.3d 1124 (N.D. Cal. May 3, 2019)), choice of law (Dkt. 62), class certification (Dkt. 71), and Matco's Motion for Judgment on the Pleadings (Dkt. 89). This extensive motion practice allowed Class Counsel to assess the strengths and weaknesses of the claims asserted and determine that the benefits of the proposed Settlement outweighed the benefits that could be achieved through further

litigation of this case. Rukin Decl., ¶¶ 14-15; Tomasevic Decl. ¶¶ 15-17. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ("the extent of the discovery to date and the stage of the litigation are both indicators of [Class] counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions").  In sum, the proposed Settlement is the non-collusive product of hard-fought litigation. Class Counsel are experienced employment counsel well-versed in the applicable substantive law, class action litigation, and the legal and factual issues in these cases. Rukin Decl., ¶¶ 2-5; Tomasevic Decl. ¶¶ 2-14. The factors relating to the views of counsel, as well as the depth of discovery and the arm's-length nature of the settlement, support final approval of the Settlement in this case.

### 3. *The Lack of Opposition By the Class Supports Approval of the Settlement*

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *National Rural Telecommunications Cooperative*, 221 F.R.D. at 528, citing 5 Moore's Federal Practice, § 23.85(2)(d) (Matthew Bender 3d. ed.). As described above, to date[4], no Settlement Class Members have excluded themselves from the settlement and no Settlement Class Member has filed an objection to the settlement ILYM Decl., ¶¶ 12-13.  Indeed, Settlement Class Members have affirmatively expressed positive opinions about the Settlement to Class Counsel. *See* Rukin Decl. ¶ 17. The lack of objections demonstrates the fairness, reasonableness, and adequacy of the settlement. *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (settlement was fair, adequate, and reasonable where 0.05% of class members objected and 0.55% of class members opted out); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding settlement fair, adequate, and reasonable where 16% of class members objected to the settlement); *Klee v. Nissan N. Am., Inc.*, No. CV1208238AWTPJWX, 2015 WL 4538426, at *9 (C.D. Cal. July 7, 2015) (finding settlement to be fair, adequate, and reasonable where 0.62% of class members requested exclusion and .06% of the class members objected); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *14 (E.D. Cal. Jun. 11, 2012) (finding settlement to be fair, adequate, and reasonable where "less than two-tenths of one percent

---

[4] As explained above, Class Counsel will submit a supplemental statement at the close of the consideration period to update the Court regarding the final numbers of any opt-outs or objections.

1    of Class Members opted out of the Settlement" and no class members objected).

2        **B.      The Notice Provided to Settlement Class Members was Reasonable**

3            Before a proposed settlement is approved, Rule 23 requires the Court to ensure that notice

4    is directed "in a reasonable manner to all class members who would be bound" by the proposed

5    settlement. Fed. R. Civ. P. 23(c)(2)(B) and (e)(1). Plaintiff submitted the parties' agreed-upon

6    Notice with their Motion for Preliminary Approval, which the Court approved. *See* Dkt. 104.

7            As detailed in the ILYM Declaration and described above, notice of the proposed

8    Settlement was distributed to Settlement Class Members in accordance with the Court's January 20

9    Order.  ILYM Decl., ¶¶ 4-10. The Notice provided a detailed explanation of the claims being

10   released, the estimated compensation to each Settlement Class Member, how that compensation

11   was calculated, how Class Members could receive payment, Settlement Class Members' rights and

12   options, the identities of the Plaintiff and Class Counsel, the date and location of the final fairness

13   hearing, and where Settlement Class Members could locate additional information about the

14   Settlement. ILYM Decl., Exhs. A, B. In sum, the content and method of distribution of the Notice

15   provided Class Members with sufficient information and opportunity to decide whether or not to

16   participate in the Settlement and was therefore reasonable.

17       **C.      The Requested LWDA Payment is Reasonable**

18           In reviewing a class action settlement that encompasses claims under the Private Attorneys

19   General Act ("PAGA"), the trial court should evaluate the adequacy of compensation to the class

20   as well as the adequacy of the settlement in view of the purposes and policies of PAGA. *See*

21   *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). In performing this

22   analysis, "the court may apply a sliding scale. For example, if the settlement for the Rule 23 class

23   is robust, the purposes of PAGA may be concurrently fulfilled. By providing fair compensation to

24   the class members as employees and substantial monetary relief, a settlement not only vindicates

25   the rights of the class members as employees, but may have a deterrent effect upon the defendant

26   employer and other employers, an objective of PAGA." *Id.*

27           Here, the Settlement, including the $250,000 PAGA settlement—$187,500 of which will be

28   paid to the LWDA—fulfill the purposes of PAGA.  Because the core of this case is Plaintiff's

- 13 -

1   allegation that he and other Settlement Class Members were misclassified as independent

2   contractors and thus not paid for the benefits of employment—including for expenses and related

3   damages—the proposed distribution ensures that the majority of the Settlement funds will be

4   allocated to Settlement Class Members who are owed unpaid business expenses and related

5   compensation. This is consistent with the purposes of PAGA, which include "encouraging

6   compliance with Labor Code provisions" and "further[ing] the state's policy to protect workers

7   from substandard and unlawful conditions." *O'Connor*, 201 F. Supp. 3d. at 1132-33 (citing brief

8   submitted by the LWDA).

9          Plaintiff also considered the range of payments to the LWDA in similar cases in

10   determining how much to allocate to the LWDA here. The proposed payment of $187,500 out of a

11   total Settlement value of $15,803,850 is in line with the range of payments to the LWDA that have

12   been approved in other cases. *See, e.g., Chu v. Wells Fargo Invs., LLC*, No. C-05-4526-MHP, 2011

13   WL 672645, at *1, *6 (N.D. Cal. Feb. 16, 2011) (approving $7,500 payment to LWDA out of $6.9

14   million common fund settlement); *Millan v. Cascade Water Servs., Inc.*, No.

15   112CV01821AWIEPG, 2016 WL 3077710, at *1, *14 (E.D. Cal. May 31, 2016) (approving

16   $3,000 payment to LWDA out of $150,000 total settlement); *McKenzie v. Fed. Exp. Corp.*, No. CV

17   10-02420 GAF PLAX, 2012 WL 2930201, at *1, *12 (C.D. Cal. July 2, 2012) (approving $61,875

18   payment to LWDA out of total settlement of $8.25 million); *Schiller*, 2012 WL 2117001, at *13,

19   *24 (recommending approval of settlement including $7,500 payment to LWDA out of $518,245

20   settlement amount).

21          **D.   The Requested Administration Costs are Reasonable**

22          The reimbursement of expenses requested by the Settlement Administrator is reasonable.

23   As set forth in the Settlement Administrator's declaration, ILYM prepared the class notices for

24   mailing, mailed and emailed nearly 300 class Notices, conducted necessary follow-up with regard

25   to returned notices, created a settlement website, and will be responsible for distribution of the

26   settlement funds. *See generally* ILYM Decl. ILYM's requested fee of $10,000 is thus reasonable.

27   **VI.   CONCLUSION**

28          For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order: (1)

granting final approval of the proposed Settlement; (2) finding that adequate notice was provided to the Settlement Class; (3) approving a payment of $10,000 to ILYM for settlement administration costs; (4) approving a payment of $187,500 to the LWDA; and (5) dismissing this lawsuit with prejudice while retaining jurisdiction over the case and the Parties to the extent necessary to implement the terms of the Settlement Agreement until each act agreed to be performed by the Parties under the Settlement has been performed.

Dated: March 28, 2022

**RUKIN HYLAND & RIGGIN LLP**

By:    */s/  Peter Rukin*
Peter Rukin (SBN 178336)
Jessica Riggin (SBN 281712)
Valerie Brender (SBN 298224)
1939 Harrison Street, Suite 290
Oakland, CA 94612
Tel: (415) 421-1800
Fax: (415) 421-1700
Email: prukin@rukinhyland.com
Email: jriggin@rukinhyland.com
Email: vbrender@rukinhyland.com

Attorneys for Plaintiff,
JOHN FLEMING

**NICHOLAS & TOMASEVIC, LLP**

By:    */s/ Shaun Markley*
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiff,
JOHN FLEMING